1   DANIEL J. BERGESON, Bar No. 105439
    dbergeson@be-law.com
2   MELINDA M. MORTON, Bar No. 209373
    mmorton@be-law.com
3   BERGESON, LLP
    303 Almaden Boulevard, Suite 500
4   San Jose, CA 95110-2712
    Telephone:  (408) 291-6200
5   Facsimile:   (408) 297-6000

6   Attorneys for Defendants
    OPPORTUNITY FUND and ANTHONY CHANG

7

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11   _____ DIVISION

12

13   BRIAN LAWRENCE & ASSOCIATES (BLAA),   Case No. C10-00619 PB

14                         Plaintiff,        **DEFENDANTS OPPORTUNITY FUND
                                             AND ANTHONY CHANG'S NOTICE OF**
15        vs.                                **REMOVAL OF ACTION
                                             UNDER 28 U.S.C. §1441 (b)**
16   LENDERS FOR COMMUNITY
     DEVELOPMENT (LCD) & AKA
17   OPPORTUNITY FUND AND ITS AGENTS,
     NORCAL FDC, [CITIBANK(WEST), FSB,     San Francisco County Superior
18   BANK OF AMERICA, BANK OF THE WEST,    Case No. CGC-09-486350
     SILICON VALLEY BANK], & DOES 1-100    Judge Arlene T. Borick
19   *FOR ADDITIONAL DEFENDANTS, SEE       Dept. 212
     PAGES 22-23 PER COMPLAINT,
20
21                         Defendants.

22

23

24

25

26

27

28

1    TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2         PLEASE TAKE NOTICE that defendants Opportunity Fund Northern California, a

3    California corporation, and Anthony Chang, an individual (collectively "Defendants") hereby

4    remove to this Court the state court action described below.

5         1.    On March 19, 2009, an action was commenced in the Superior Court of the State of

6    California in and for the City of San Francisco and County of San Francisco, entitled *Brian*

7    *Lawrence & Associates (BLAA) v. Lenders for Community Development (LCD) & its agents,*

8    *NORCAL FDC, [Citibank(West), FSB, Bank of America, Bank of the West, Silicon Valley Bank]*

9    *Banking Corporations, et al.*, as case number CGC-09-486350 (the "State Action").  On October

10   8, 2009, plaintiff filed a first amended complaint to the action, entitled *Brian Lawrence &*

11   *Associates (BLAA) v. Lenders for Community Development (LCD) & aka Opportunity Fund And*

12   *its agents, NORCAL FDC, [Citibank(West), FSB, Bank of America, Bank of the West, Silicon*

13   *Valley Bank], & Does 1-100 \*For Additional Defendants, See Pages 22-23 Per Complaint.*

14   Copies of all process and pleadings served on Defendants in the State Action, including the

15   Summons and First Amended Complaint, served on Defendants on January 13, 2009, are

16   submitted with this Notice of Removal as Exhibit "A" hereto.  A copy of the Proof of Service of

17   Summons on Defendants is attached hereto as Exhibit "B."  Defendants have not yet responded to

18   the First Amended Complaint.

19        2.    Defendants expressly reserve their right to raise all defenses and objections to

20   Plaintiff's claims after the action is removed to the above Court.  By filing this Notice of Removal,

21   Defendants do not waive any defense that may be available to them.

22        3.    All defendants who have been served with Summons and Complaint join in this

23   Notice of Removal.

24                              JURISDICTION

25        4.    This action is a civil action of which this Court has original jurisdiction under 28

26   U.S.C. §1331, and is one which may be removed to this Court by Defendants pursuant to the

27   provisions of 28 U.S.C. §1441 (b) in that it arises under 15 U.S.C. § 1691, 42 U.S.C. § 3605, 42

28   U.S.C. §14503(f), 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42

- 1 -

Case No. _____

1 | U.S.C. § 1986, and 42 U.S.C. § 2000.

2 |      5.     The United States District Court for the Northern District of California is the

3 | District Court for the district that includes the County of San Francisco, California.

4 | INTRADISTRICT ASSIGNMENT

5 |      6.     Defendants request that this case be assigned to the San Francisco Division because

6 | it is removed from the San Francisco County Superior Court, and because the allegedly unlawful

7 | conduct occurred in San Francisco County.

8 | Dated:  February 5, 2010          BERGESON, LLP

9 |

10 | By:_____

11 |      Melinda M. Morton

12 | Attorneys for Defendants

13 | OPPORTUNITY FUND and ANTHONY CHANG

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

NOTICE OF REMOVAL OF ACTION            Case No. _____

CERTIFICATE OF SERVICE

I declare as follows:

I am an employee in Santa Clara County, the county in which the service described below occurs. My business address is 303 Almaden Boulevard, Suite 500, San Jose, California 95110. I am over the age of eighteen (18) years and am not a party to the cause for which I am serving the document(s) named below.

On February 11, 2010, I served the within:

**DEFENDANTS OPPORTUNITY FUND AND ANTHONY CHANG'S NOTICE OF REMOVAL OF ACTION**

on the parties below by placing a true copy thereof in a sealed envelope and served same as follows:

   X        BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED: I caused such envelope to be deposited in the mail at San Jose, California. I am readily familiar with Bergeson, LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence would be deposited with the United States Postal Service on this day. FRCP Title II, §5(b)(2)(B).

**PLAINTIFF IN PRO PER**
Brian Lawrence
Brian Lawrence & Assoc.
P.O. Box 23352
Oakland, CA 94623
P: 510.827.8780
blawrenceassociates@yahoo.com

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on February 11, 2010, at San Jose, California.

                                       _____
                                          Gail Simmons

NOTICE OF REMOVAL OF ACTION                             Case No. _____

# EXHIBIT A

## TO
## DEFENDANTS OPPORTUNITY FUND
## AND ANTHONY CHANG'S NOTICE OF
## REMOVAL OF ACTION

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

<table>
<tr><td>

**NOTICE TO DEFENDANT:** LENDERS FOR COMMUNITY DEVELOPMENT (LCD)
**(AVISO AL DEMANDADO):** AKA OPPORTUNITY FUND, AND ITS
AGENTS, ERIC WEAVER, DEVIN MCALPINE, ITS BANKING PARTNERS
[CITIBANK (WEST), FSB, BANK OF AMERICA, BANK OF THE WEST, SILICON VALLEY BANK *]
* FOR ADDITIONAL DEFENDANTS, SEE PAGES 21-23 PER COMPLAINT, & DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**   DEFENDANTS
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

BRIAN LAWRENCE & ASSOCIATES

</td><td>

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

<table>
<tr><td>

The name and address of the court is:
(El nombre y dirección de la corte es):
San Francisco Superior Court
Civic Center Courthouse
400 McAllister Street, Room 103
San Francisco, CA 94102-4514

</td><td>

CASE NUMBER:
(Número del Caso):
CGC-09-486350

</td></tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
BRIAN LAWRENCE & ASSOCIATES
P.O. BOX 23352, OAKLAND, CA 94023

<table>
<tr><td>

DATE:
(Fecha)   JAN 1 3 2010   GORDON PARK-LI

</td><td>Clerk, by
(Secretario)   WESLEY RAMIREZ</td><td>, Deputy
(Adjunto)</td></tr>
</table>

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify):

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)   ☒ CCP 416.90 (authorized person)
       ☐ other (specify):
4. ☐ by personal delivery on (date):

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

1
Brian Lawrence
2
Brian Lawrence & Associates
3
Plaintiff In Pro Per
P.O. BOX 23352
4
Oakland, CA  94623



**F I L E D**
Superior Court of California
County of San Francisco

OCT 0 8 2009

GORDON PARK-LI, Clerk



BY: _____
Deputy Clerk

**FILED AT INSISTENCE OF LITIGANT**

7
          **SUPERIOR COURT FOR THE SAN FRANCISCO JUDICIAL DISTRICT**
8
                    **UNLIMITED CIVIL JURISDICTION**
9
               **STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
10

11
Brian Lawrence & Associates (BLAA),          )    Case No.: **CGC-09-486350**
12                                            )
              Plaintiff,                      )    Brian Lawrence & Associates (BLAA)
13                                            )    vs. Lenders for Community Development –
      vs.                                     )    aka Opportunity Fund  et al Defendants,
14                                            )    &  Does 1-100
Lenders for Community Development (LCD) &     )
15  aka OPPORTUNITY FUND                      )
And its agents, Eric Weaver, Devin McAlpine, its
16                                                 **FIRST AMENDED COMPLAINT FOR**
banking partners [Citibank(West), FSB, Bank of     **DAMAGES AND PRELIMINARY AND**
17                                                 **PERMANENT INJUNCTION**
America, Bank of the West, Silicon Valley Bank et al]  [UN-LIMITED CIVIL CASE]
18
Banking Corporations, & DOES 1-100,  * for additional defendants, see pages 22-23
19                                             per complaint.
              Defendant(s)
20

21

22
                              **INTRODUCTION**
23
**I.**        This report and complaint examines the malfeasance of a Microfinance Institution (MFI), as
24
25
defendant to this action, operating within the global arena of the Microfinance Industry, and the US
26
domestic banking and credit industry as a whole; and as pleading, this action petitions for redress of
27
grievances caused by said MFI, at all times during this complaint, against a low income self-employed
28
29
client consumer and credit applicant as the undersigned Plaintiff to this action.
30

                              BLAA vs. LCD -



# TABLE OF CONTENTS

|  | Paragraph No. | Page No. |
|---|---|---|
| INVESTIGATIVE REPORT & ANALYSIS | I | 1 |
| ▪ Introduction | I | 1 |
| ▪ Microfinance Industry and Institutions | II | 2 |
| ▪ A Global Fiduciary Duty | XII | 6 |
| ▪ Brief Overview of Complaint | XV | 7 |
| ▪ Pattern and Practice of Discrimination | XXIII | 11 |
| ▪ Conspiracy | XXXI | 15 |
| COMPLAINT |  |  |
| ▪ Nature of Action | 1 | 19 |
| ▪ Jurisdiction | 5 | 20 |
| ▪ Intra District Assignment | 7 | 20 |
| PARTIES | 8 | 21 |
| ▪ Plaintiff |  |  |
| ▪ Defendants | 10 | 21 |
| "Defendant(s)LCD/Opportunity Fund |  |  |
| • Member Banks | 18 | 22 |
| • Board of Directors | 19 | 22 |
| • Board of Advisors | 20 | 23 |
| • Small Business Loan Committee | 21 |  |
| • Community Partners | 22 | 23 |
| AGENCY, JOINT VENTURE, ALTER EGO | 25 | 24 |
| SCOPE of ACTIONS & ACTORS | 26 | 24 |
| CONSPIRATORS | 29 | 25 |
| CO-CONSPIRATORS | 30 | 25 |
| BACKGROUND FACTS | 32 | 25 |
| FIRST CAUSE OF ACTION | 60 | 30 |
| PRIMA FACIE VIOLATION OF | 70 | 33 |
| THE EQUAL OPPORTUNITY CREDIT ACT (ECOA), |  |  |
| And THE CONSUMER CREDIT ACT, 15 U.S.C. § 1691 *et seq.*, |  |  |

| | Paragraph No. | Page No. |
|---|---|---|

**SECOND CAUSE OF ACTION** — 72 — 34
VIOLATION OF THE FAIR HOUSING ACT
FHA - 42 U.S.C. § 3605 *et seq.,*

**THIRD CAUSE OF ACTION** — 81(a-i) — 36
VIOLATION OF THE FAIR EMPLOYMENT ACT
CAL GOVT CODE § 12900 *et seq.,*
[DISCRIMINATION]

**FOURTH CAUSE OF ACTION** — 83 — 39
BREACH OF CONTRACT – Arthur Washington

**FIFTH CAUSE OF ACTION** — 109 — 45
BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

**SIXTH CAUSE OF ACTION** — 111 — 46
BREACH OF FIDUCIARY DUTY with Plaintiff - COUNT 1 — 111
Violation(s) of California Corp C §§ 50 (1975), 5231(a),
Corp C §§ 5250, 17231(a), 9241(a),
CC § 1714(a) and US Federal 42 USC § 14503(f).

**SIXTH CAUSE OF ACTION, cont'd** — 140 — 53
BREACH OF FIDUCIARY DUTY among Defendants
Causing damage to Plaintiff - COUNT 2 — 140
Violation of the Davis-Sterling Act (CC §§ 1350-1376 et al.)

**SEVENTH CAUSE OF ACTION** — 156 — 57
TORTOUS INTERFERENCE - Devin McAlpine

**EIGHTH CAUSE OF ACTION** — 182 — 65
CONSPIRACY- Complaint [Code Civ.Proc. § 425.10]
for Compensatory [Civ.Code § 3333]
and Punitive or Exemplary [Civ. Code § 3294]
Damages for Injury Based on Conspiracy

ELEMENTS of DEFENDANTS' CONSPIRACT (1-10):

| | Paragraph No. | Page No. |
|---|---|---|
| 1.) ATTACK -   [DM] | 193 | 68 |
| 2.) DELAY    -   [DM, WC, EW, AW] | 204 | 71 |
| 3.) ALTER    -   [DM, WC] | 206 | 74 |
| 4.) DENY     -   [WC, AC, DM] | 216 | 76 |
| 5.) COERCE -    [AW] | 239 | 80 |
| 6.) EVADE    -   [DM, LCD, LCD Policy, LCD affiliates et al] | 245 | 82 |
| ( i.) Misrepresentation/Fraud & Deceit, - [AC, DM] | 253 | 84 |
| (ii) Misrepresentation, [DM, AW] | 259 | 86 |
| 7.) CONCEAL -   [AC, DM, EW, AW, LCD et al] | 264 | 88 |
| 8.) PLOT & SCHEME – [DM, AC] | 297 | 95 |

ii

| | Paragraph No. | Page No. |
|---|---|---|

**EIGHTH CAUSE OF ACTION** – cont'd
CONSPIRACY - **Complaint** [Code Civ.Proc. § 425.10]

| | | |
|---|---|---|
| **9.) NEGLECT  -**  [AW, EW, Citibank et al.] | 299 | 95 |
| (i) LCD Founder and Executive Director Eric Weaver, | 305(2) | 97 |
| (ii) CITIBANK – Member Bank/Board of Director, | 306(3) | 97 |
| | | |
| **10.) PERVASIVENESS** – [DM, EW, LCD Policy& Practice et al] | 320 | 101 |
| (i) Pattern & Practice, - [DM, LCD Policy, Operation, & Network] | 320 | 101 |
| (ii) Expanded Conspiracy - [DM, LCD Policy, Operation, & Network] | 322 | 102 |
| | | |
| **11.) FOUNDATION FOR CONSPIRACY** -- [DM, LCD et al.] | 335 | 105 |

**NINTH CAUSE OF ACTION,** cont'd
FRAUD AND DECEIT - **Count 1** – Defendant Arthur Washington (AW)    365    114

**NINTH CAUSE OF ACTION,** cont'd
FRAUD AND DECEIT - **Count 2** – Defendant Devin McAlpine (DM)    403    121

**TENTH CAUSE OF ACTION**    410    123
CONSTRUCTIVE FRAUD - Allegation of Confidential Relationship
Raising Presumption of Undue Influence or Constructive Fraud.
**[Civ. Code Section 1573(1), 1575(1)]**

**ELEVENTH CAUSE OF ACTION**    424    126
DISCRIMINATION - Complaint for Damages, and
Preliminary and Permanent Injunction for
Violation of the Unruh Civil Rights Act
**[Civ. Code §§ 51, 51.5, 51.7, 52, 52(a)]**

   - Pattern & Practice of Discrimination    428    127

**TWELVTH CAUSE OF ACTION**    437    131
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**THIRTEENTH CAUSE OF ACTION**    446    132
NEGLIGENT SUPERVISION - Vicarious Liability - COMPLAINT
**[Code Civ.Proc. Section 425.10]**
For DAMAGES **[Civ. Code Section 3333]**
Personal and Economic Injury and Property Damage based on Negligence
**[Civ.Code Section 1714(a)]** – Joint and Several Liability of Defendants.

|                                                                                   | Paragraph No. | Page No. |
|-----------------------------------------------------------------------------------|---------------|----------|
| **THIRTEENTH CAUSE OF ACTION** -- cont'd                                          |               |          |
| NEGLIGENT SUPERVISION - Vicarious Liability                                       |               |          |
|                                                                                   |               |          |
| **Count 1 –** LCD Credit Scoring & Credit Applicant Evaluation System             | 446           | 132      |
|                                                                                   |               |          |
| **Count 2 –** DM acting as LCD Business Advisor                                    | 471           | 137      |
| & WC as LCD Loan Consultant                                                        |               |          |
|                                                                                   |               |          |
| **Count 3 –** LCD Operation and Management                                         | 491           | 141      |
|                                                                                   |               |          |
| **Count 4 –** Micro Finance Industry **(United States of America)**               | 504           | 143      |
|                                                                                   |               |          |
| **FOURTEENTH CAUSE OF ACTION**                                                    | 520           | 147      |
| DISCRIMINATION                                                                     |               |          |
| Violations of 42 USC §§ 1981, 1982, and 42 USC § 2000                             |               |          |
|                                                                                   |               |          |
| **FIFTEENTH CAUSE OF ACTION**                                                     | 547           | 154      |
| VIOLATIONS OF **42 U.S.C. § 1983:**                                               |               |          |
| **COUNT 1 - DEPRIVATION OF RIGHTS**                                               |               |          |
|                                                                                   |               |          |
| **FIFTEENTH CAUSE OF ACTION,** cont'd                                             | 589           | 166      |
| VIOLATION OF **42 U.S.C. 1983:**                                                  |               |          |
| **COUNT 2 - RETALIATION FOR PETITIONING**                                         |               |          |
|                                                                                   |               |          |
| **SIXTEENTH CAUSE OF ACTION**                                                     | 592           | 167      |
| VIOLATIONS OF 42 U.S.C. 1985:                                                      |               |          |
| CONSPIRACY TO INTERFERE                                                            |               |          |
| WITH FEDERALLY PROTECTED CIVIL RIGHTS                                              |               |          |
|                                                                                   |               |          |
| **SEVENTEENTH CAUSE OF ACTION**                                                   | 596           | 169      |
| VIOLATIONS OF 42 U.S.C. 1986:                                                      |               |          |
| REFUSING OR NEGLECTING TO PREVENT                                                  |               |          |
|                                                                                   |               |          |
| **CONCLUSION**                                                                    | 602           | 172      |
|                                                                                   |               |          |
| **PLAINTIFF FINAL PRAYERS**                                                       | 635           | 181      |
|                                                                                   |               |          |
| **SIGNATURE**                                                                     | n/a           | 154      |

**MICROFINANCE INDUSTRY AND INSTITUTIONS**

II.      "Microfinance refers to the provision of financial services to poor or low-income clients, including consumers and the self-employed. The term also refers to the practice of sustainably delivering those services." **(Wikipedia).** Microcredit, a function of microfinance, refers to the extension of loans to poor microenterprises or socially and economically disadvantaged individuals, self-employed persons and small business owners. The defendants as subject to this report of investigation and complaint regularly extend microcredit to preferred clientele.

III.      "Over the past two decades, "microfinance" – the extension of small loans and other financial services to individuals in poor countries – has become a darling of the international community. The movement's founding father, Muhommed Yunus, was awarded the Nobel Peace Prize in 2006; the United Nations says that microfinance can help countries achieve the Millennium Development goals.  Given the newness of the industry, and the informal nature of many microfinance institutions (MFI's), relatively little is known about the size and quantity of the lenders," – as this complaint seeks to quell this disparity in reporting on the defendants to this action – and as little is known about "the kinds of loans that are disbursed, or conditions under which clients are served – but the available data tell an impressive story."

IV.      According to the most recent figures from the nonprofit Microfinance Information Exchange, more than 2,200 MFI's are currently lending to around 77 million borrowers worldwide. The Microcredit Summit Campaign reckons that the numbers are even higher; it counts more than 3,300 MFI's serving 133 million clients, including 92.9 million of the world's poorest people (representing an increase of over 700 percent from 1992) The global MFI industry has also attracted hefty amounts of U.S. aid, including $245 million in 2008. In 2006, capital investment in MFI's eclipsed $4 billion, more than triple the level

in 2004.Still, the rapid proliferation of MFI's has drawn criticism. Some observers fear that it has outpaced the capacity of developing world governments to implement sensible regulatory measures. **Because they are not considered "banks", many MFI's fall outside the regulatory purview of government agencies. While this has contributed to the industry's flexibility and dynamism (and propelled its fast growth), it has also created a "Wild West" environment in which borrowers with limited financial experience may be exploited by incompetent or unscrupulous lenders."** (Making Microfinance Work, by Karen Porter, Tuesday, September 16, 2008, The American – A magazine of ideas – online at American.com.)

**V.**     The above described "Wild West" dynamic predicates the arena and basis of the aggregate actions and misconduct of the defendants and defendant affiliates to this action, as well as similarly situated MFI's as unscrupulous lenders to borrowers and credit applicants such as the Plaintiff and similarly situated borrowers and credit applicants.

**VI.**     "In 2006, the Indian government cracked down on two large MFI's following the suicides of at least 60 of their customers (who were under pressure to repay loans at prohibitively high interest rates)." In America, such pattern and practice of crime against customers would certainly not be allowed to proliferate, yet a given MFI, such as the defendants in this matter, can commit and have committed a much more quiet and more insidious crime(s) and/or civil wrong(s), such as discrimination, fraud and deceit, and other misconduct, through a more conspiratorial pattern requiring more in depth of inquiry and investigation to ferret out and expose. Again, this complaint and report sets out to accomplish this task.

**VII.**   Microfinance will continue to gain significance both domestically and internationally, and predicts and presupposes the extreme relevance and predication of this report and complaint. From America - the place and jurisdiction of this complaint - the now current and acting US Secretary of State Hillary Clinton met previously with microcredit pioneer Mohammed Yunus in Bangladesh, in April 1995 and championed Yunus's Grameen Bank and the microcredit movement making unsecured loans to help the poor achieve self-sufficiency. Hillary Clinton spotlighted the emergence of microcredit programs that offered small, unsecured loans to give the impoverished a path to self-sufficiency prompting Mohammed Yunus to speak of the incoming Secretary of State in these words: "'When Hillary Clinton says something, the whole world listens' , Mohammed Yunus, the founder of Grameen bank, told reporters after she sat down in the remote village of Moishahati with a group of Bangladeshi women who had benefited from the bank's microcredit loans." **(USA Today, Susan Page)**

**VIII.**   The United States supports microenterprise development through multi-and bilateral programs; the multilateral program is coordinated by the World Bank's Consultative Group to Assist the Poorest ("CGAP"). As the number one donor to the International Financial Institution and the United Nations development agencies, the US can play a leading role in mobilizing resources from other countries to support microenterprise programs; CGAP now coordinates the activities of 27 multi- and bilateral donors. **(HOUSE Report No. 106-82, April 12, 1999, Microenterprise for Self-Reliance Act of 1999).**

**IX.**   Microfinance is an extremely significant burgeoning industry and socio-economic innovation to America and the global community as a whole, and therefore bears poignant relevance to what occurs within the borders of the United States of America with respect to actions and policing of American MFI's. **Malfeasance of an individual American microfinance leader affects industry integrity,**

performance, and long term effectiveness of the industry as a whole. Innovation and standards must be upheld and protected.


**X.**     In the United States, there is the Equal Credit Opportunity Act (ECOA), 42 U.S.C. 1691 et seq., originally sponsored and passed through Congress by then US Senator, and now vice-president Joe Biden, as the primary and fundamental check, balance, enforcement and supervision mechanism to American MFI's and of banking and credit for the socially and economically disadvantaged as an industry whole. When an American MFI violates the ECOA and other civil rights standards, Law, and legislation, as the defendants have done, it sends a dangerous tremor and attack onto a burgeoning socio-economic salve and stimulus for the American economy and free enterprise system, and threatens the cause for hope against world poverty, an expanding microcredit industry, and a vibrant and diverse global economy.


**XI.**     When a civil wrong of discrimination, crime, and/or other wrong doing is discovered in an American MFI, and is left un-answered or reprimanded, it jeopardizes the American reputation abroad and the American responsibility to lead through a domestic and international economic downturn and challenge. This kind of threat must be checked, stopped, and corrected as any threat to American social and economic principles of democracy must be checked, stopped, and corrected. This kind of challenge and attack on progress must be subdued and not allowed to stand! Freedom, equality, and opportunity must prevail! This report and complaint serves and contributes to this purpose.

## A GLOBAL FIDUCIARY DUTY

XII.    A government imposed fiduciary duty exists upon American MFIs which is not representative of

an "arms-length" relationship of lenders to borrowers, whereas by contrast, the very nature of

Microfinance and operation of the defendants as an MFI is centered in socio-economic development and

financial counseling, a the development of a confidential relationship, and is funded and administered

accordingly as such. Further, the arena under which the actions of this complaint were conducted - that is

within the microfinance industry as a whole – the defendants act as a representative of the Microfinance

Industry within the United States as an industry leader and international voice before the national press.

(See Wall Street Journal, Dec 6th, 2006).

XIII.    On this basis, the defendants' operation as an MFI becomes broadly significant warranting a

watchful eye, and as the act of a defendant sponsored conspiracy arises within said microfinance industry,

combined with the relative newness of the microfinance industry, a pronounced and glaring need for

greater government regulation is thereby created, bearing significant relevance into the scope of this

entire action, brought herein, as both as an individual complaint and report.

XIV.    Microfinance is an important vehicle for global economic change, socio-economic development,

a matter of public importance, and a labor and marketplace innovation within the American free

enterprise system that cannot be neglected, especially as America expects and is expected to remain a

global leader. It must be protected. Thus, the overall legal discussion and complaint seeks to present itself

as a detailed, thorough, and comprehensive inquiry, beginning here with a brief background into the

Microfinance Industry as a whole, and a descriptive analysis of the defendants' negligent supervision as

an MFI within said industry, here in the United States, culminating into this 16 page, 6 section

investigative report as introduction to this pleading and complaint.


**BRIEF OVERVIEW OF COMPLAINT**

XV.     The Defendants in this complaint – Lenders for Community Development (LCD), now

Opportunity Fund as of 2008 - are an American Microfinance Institution (MFI), beginning in the State of

California as a US Treasury Department and State of California certified Community Development

Financial Institution (CDFI). As a quasi-government acting entity, the defendant(s) act and have acted

under the color of state law and federal law both separately at times, independent and exclusively at

times, and concurrently and co-jointly at times, where within the opportunity of unregulated or under

regulated "grey area" standards and expectations, individual and corporate self-dealing benefits,

malfeasance, and disguise of purpose or malevolent action of the defendants could thrive. This same

principle applies to the American economy, the banking and finance industries as a whole, with particular

regard to unscrupulous lenders and the current foreclosure crisis.  As Barack Obama stated in his

momentous January 20th, 2009 inaugural address:


> "Our economy is badly weakened, a consequence of greed and
> irresponsibility on the part of some, but also our collective failure to
> make hard choices and prepare the nation for a new age."
>
> - Barack Obama

**XVI.**    Microfinance is an economy for the new age. And this complaint and report seeks to expose and meet head on the greed and irresponsibility of a few who would affect the many into stagnation and indifference.

**XVII.**    Lack of forward progress can be as detrimental as digression. The defendants' founder, Eric Weaver, regularly announces to a worldwide audience, through the Wall Street Journal, as one example, that microfinance is not profitable in the United States; when, in truth, it is a lack of vision and intimate understanding of the community one is trying to develop that constitutes failure or success within the industry of microfinance and community development. The preeminent example for success in microfinance is demonstrated by Muhommed Yunas' Grameen Bank in Bangladesh - a community Yunas understands intimately being from that community. Grameen Bank's lending policies reflect that intimacy and understanding.

**XVIII.**  When it is stated in the press that LCD founder and executive director Eric Weaver "blends social mission with sound business practices" while Defendant LCD's service to the African-American community, as microfinance clients, drops 21 percentage points among LCD's total client base served over the course of two years proximately caused by the malfeasance of a single officer whom Eric Weaver, the LCD board of directors, and the member bank collective – **[Citibank, Bank of America, Bank of the West, Bank Leumi USA, Bridge Bank, Mizuho Corporate Bank of California, Greater Bay Bank, Commerica Bank, Summit National Bank, Silicon Valley Bank et al.]** - refused to discipline, there rests a glaring irresponsibility. Before the arrival of this individual LCD staff member as "managing agent" officer at LCD, LCD maintained a consistent support of African-Americans at 31% of their clientele from 1993 to 2005, yet immediately after 2006, support and services to the African-

American community dropped to 10% in 2007, continuing to the present time, due proximately to the racial discrimination by this single LCD staff member. Is this the work of a single individual and/or a conspiracy of significant tiers of the banking industry benefiting from the veil of LCD/Opportunity Fund and Microfinance? This complaint alleges both – a **"ground level"** conspiracy to discriminate and a **"top down"** conspiracy to discriminate. **This means that LCD/Opportunity Fund blends a "'social mission' with sound business practices" that include racism!!** Even allowing for a single act of moral turpitude can send shock waves throughout the global community as did the killing in cold blood of an African-American youth by a BART – local transit - police officer on January 1st, 2009, in Oakland, California. Refusing to correct the problem and apply justice decimates a "social mission" through such drastic dichotomy and hypocrisy.

XIX.    The January 2009 killing of Oscar Grant was an **"overt"** act of brutality occurring outside the scope of duty to serve and protect, one could argue, where the discrimination of defendants of this complaint constitutes a **"covert"** act of invidious racial discrimination occurring outside the scope of duty and government intent. Thus, the **"covert"** act of conspiracy attributed to the defendants runs central to and throughout the wrongful acts reported in this complaint. The **"overt"** act of police brutality was noticed by the worldwide audience through technology – cell phone video recorders and the internet. The **"covert"** act was discovered by an investigative professional trained to discover and report on such **"covert"** acts, conspiracies, civil wrongs and/or crimes. Both acts are threats to American democracy as a matter of principle when viewed from a world stage which must be reprimanded with firm resolve and conviction. Race discrimination must not be tolerated.

**XX.**    The defendants in this complaint have acted dangerously outside the scope, intent, and purpose of any reasonable standard and duty of conduct for MFI's, microcredit program administrators, special purpose and charitable corporations designed and chartered to operate as a general public benefit to community development. Thus, the defendants have violated Microfinance and microcredit principles, corporation codes and responsibility, and through discrimination by race and class, fraud and deceit, misrepresentation, negligent supervision, violation of corporate and banking standards and duties have created a volatile erosion of sound ethical principles and reason.

**XXI.**    What has been particularly disturbing with respect to the misconduct of the defendants, and the defendants' response and failure to respond to allegations and petitions to redress grievances, error, and violation of federal and state law, was that at all times during this complaint and report, the Defendants were particularly defiant, obstinate, neglectful, and conspiratorial in their malfeasance, whereby upon further investigation, petition, and inquiry, an intriguing and blatant depth and pervasiveness of conspiracy was discovered.  Attitudes of race and discrimination in 2007, the time of the defendants' acts of discrimination described in this report and complaint exists today in a vacuum a long step backwards from the astounding leap forward in 2009 that this country has experienced with the election of Barack Obama as President of the United States of America! We must continue to dream forward shedding ourselves from the nightmare of the past!! Two years can be a long time at the speed of the information age.

**XXII.**    And now, according to the actions, failures to act, and general misconduct described in this complaint and report of investigation and a frequency of mis-statements and mis-representations to the national press, LCD/Opportunity Fund founder and CEO Eric Weaver has demonstrated that he is part of

the problem not the solution within the world of Microfinance (Statements to press run counter to Consultative Group to Assist the Poor (CGAP) endorsed by the Group of Eight leaders at the G8 Summit on June 10th, 2004.) Mr. Weaver must take a strong look in the mirror of truth and correct the errors of the past, rather than embrace the politics of hypocrisy behind the curtain of national press and industry accolades.

**PATTERN AND PRACTICE OF DISCRIMINATION**

**XXIII.** The principle gravameen discovered in the actions and misconduct of the defendants during this investigation and complaint is centered on a pattern and practice of discrimination on a basis of race and class. The misconduct and wrongful actions of the defendants were particularly invidious, insidious and difficult to detect as these acts were disguised by conspiracy and subtlety whereby it required the involvement of a State of California licensed private investigator to discover and expose. Where the Plaintiff is a professional of legal and civil rights investigations trained to discover and root out such conspiracies of discrimination, violations of Federal and State Law, and threats to American civil rights, culture, democracy - all these being substantial elements of a free and diverse American enterprise system – there now exists an opportunity to address a long term solution rather than revel in past mistakes, a teachable moment.

**XXIV.** These crimes or civil wrongs could have been considered easy to overlook as with a cancerous tumor which could have gone unnoticed and unchecked except for the diligent actions and investigation conducted and reported on behalf of California business and professions code as crimes or wrongs committed against the United States of America. The discrimination discovered in this investigation was

particularly conspiratorial as any degree of racism in 2006 continuing in pattern and practice to this year of 2009 would exhibit subtle, quiet tactics and obstinacy to sustain its invidious existence.

XXV.   Previous to the Civil Rights Act of 1964, it was common to find published notices stating, NO BLACKS ALLOWED, WHITES ONLY, COLORED NEED NOT APPLY, and this was lawful in the various states. But the United States of America united against this heinous and hideous crime of racism, passing the Civil Rights Act and spawning a new unity movement towards equality and justice, as the Rev. Dr. Martin Luther King Jr.'s dream marched forward. Yet race still remained a challenge for America until the uplifting and momentous election of Barack Obama in 2009. Yet in 2008, even as America and the presidential campaign struggled to put race and the socio-political attitudes of race behind the urgency of the current economic crisis, having endured the question of race throughout the past 18 months as of November 4th, 2008, a recent past of invidious discrimination in a plethora of forms can exist when power is given to quasi-government entities, un-checked and un-regulated for all practical purposes, until a report of investigation comes along pointing out the need for change and challenge to any pattern or practice of discrimination, violation of federal Law and the legislative intent of Congress. A new and quiet racism, in place of the NO BLACKS ALLOWED signs, comes in the form of allowing access to every other ethnic minority, including immigrants; maybe some without legal status to work or receive federal funds, yet, with the defendants, but when it comes to African-Americans, the sign goes up "NO ROOM AT THE INN".

XXVI.  This is exactly what is occurring with Lenders for Community Development/Opportunity Fund, as of 2007, and due to the actions proximately by a single individual, a corporate employee at LCD, in

concert with policy of the member banks. The evidence provided here bears witness. Therefore, this report and petition, again, comes to resolve this civil wrong against the United States of America.

XXVII. Another thing that is particularly disturbing is that the violators LCD in this case, have continued to act in wanton, malicious, subtle, yet oppressive fashion in reckless disregard of the applicable law – call it arrogance or the attitude of imperviousness - all the while acting under the color of state law, or federal law, since the plaintiff in this matter exercised and offered direct complaints to LCD throughout the year 2007. Again, the pattern and practice of racial discrimination has gotten worse as the submitted evidence will indicate, as LCD collects microfinance industry accolades, awards, publicity, private international banking support, and local government support. LCD acts as if untouchable. This is NO different than Jim Crowe with a new face if left to linger unchecked and without remedy. This kind of **"quiet racism"** could be a subject for public awareness as race continues to face off in the public discourse under the surface of community development with respect to continuing and disturbing social statistics attributed to African-American males, into the new era of hope and change ushered in by the current and 44th president of the United States of America.

XXVIII.          One question lurks, even as it is clear that a **"ground level"** conspiracy of discrimination exists as well as a **"top down"** conspiracy to discriminate, in concert: Did the Defendant DM receive direct marching orders from the Defendant LCD Board of Directors, and the defendant member banks, including the existence of an **"underground operation"**? This complaint seeks to investigate. Yet, it is important to reiterate that this violation by the defendants becomes evident as a result of the undue influence of a single individual asserting power, personal bias, and the coercion of conspiracy, and the corporate conspiracy of banking partners with a socio-economic engineering agenda of structural

BLAA vs. LCD -                                          13

classicism. Had it not been for this individual case of racism, and the exposure that this complaint brings, the **"quiet racism"** or extreme discrimination by the defendants, would have gone unnoticed. There would be no need to inform the US Government, The Courts, appropriate government agencies, and the public interest of this wanton, reckless, conspiratorial, and malicious act of discrimination. However, this is not the case.

**XXIX.** To simplify the significance of evidence presented, it is partially the LCD/Opportunity Fund credit scoring and evaluation system that allows, has allowed, a single individual (who is a white male), to discriminate against the undersigned private investigator (who is an African-American male), and other African-Americans by way of being able to effect undue influence, power, and control over EVERY single micro-credit application that passes through the creditor's application system. The irony and utter hypocrisy is that this system belongs to a quasi-government entity purposefully designed for "socially and economically disadvantaged individuals", women, and minorities as per legislative intent of Congress and LCD/Opportunity Fund advertised policy in order to secure funding and government support. Yet since the discrimination and ECOA violation in this individual case occurred - between December 20th 2006 and May 15th, 2007 - under the watch and undue influence, power, and control of a central individual white male, African-Americans as clients of the creditor LCD/Opportunity Fund dropped from 31% represented to a meager 10%, in the course of a SINGLE year!!!!!!!! The figure of 10% is well below the percentage population of African-Americans in the United States!!!! This pattern and practice was and/or is represented in LCD/Opportunity Fund's own website, notwithstanding their name change from Lenders for Community Development to Opportunity Fund, which appears to be an alter-ego, guise or cover for more aggressive banking and property development function under the practice of acting as a bank, or commercial banker, without being government regulated as a bank or commercial banker. The

defendants' conspiracy and deceit is pervasive over and beyond a pattern and practice of discrimination coupled with the fact that as of November 4th, 2008, there were NO African-Americans employed by LCD/Opportunity Fund. There are currently NO African-Americans employed by the Defendants LCD/Opportunity Fund.

XXX.   Being out of touch with or discriminating against a community that a given MFI has been chartered to serve is as fundamental a hypocrisy and violation of microfinance principles as can be imagined. By contrast, Mohammed Yonus, the founder of the Microfinance/Microcredit movement with Grameen Bank was successful because he was intimately engaged with and part of the community of Bangladesh. The antagonism of a single LCD/Opportunity Fund employee acting in conspiracy with a "**top down**" discriminatory directive against the African-American community, first and foremost, and other peoples of color, and the resultant sponsored social conspiracy, in conjunction with LCD/Opportunity Fund and affiliate conspiracy, neglect, and negligent supervision, if left un-reprimanded, will cause failure in America's hope to lead the global community towards socio-economic freedom, equality, and opportunity if not checked, rejected, and reversed.

**CONSPIRACY**

XXXI.   Conspiracy is at the basis and foundation of the recent threat and risk of financial collapse in the American economy – the "**…greed and irresponsibility on the part of some.**" (Barack Obama). The US Government and tax-payers have committed upwards of $700 Billion dollars to address this potential financial meltdown and continuing mortgage foreclosure crisis, with $25 Billion being discussed on Capital Hill as a bail out for the American Auto Industry. Greater regulation is what is being purported to be the plan and method of domestic US economic policy to recover and to scrutinize failed vision and

management as well as the wrongful acts of officers and executives – conspiracy being among these wrongful acts and reasons for the current crisis.

XXXII. The above described conspiracy of the defendants to this action alleged herein, at all times during this complaint, is, again, no different then the aggregate financial crisis and a thematic of the need for change. Therefore this individual complaint becomes a tool, a resource and a contribution to the objective of remaking America representing hope and a profound look into the factors of conspiracy that would run counter to this vision of hope, and to quell the potential threat and damage to economic structure and development that such conspiracies may cause, offering the opportunity to defeat such threats and damage in favor of economic growth and prosperity.

XXXIII.        The defendants have demonstrated a microcosm of conspiracy as described in this complaint – and a conspiracy of discrimination. And again, the wrongful acts of racial discrimination by the defendants occurred before the climate of racism was shattered by the election of the 44th president of the United States of America, but the LCD/Opportunity Fund conspiracy, defiance, pattern and practice of discrimination, "quiet racism", irresponsibility and greed – especially for national recognition as a leading voice for microfinance in the face of hypocrisy -- remain. Further, a conspiracy to marginalize service to African-Americans beginning in the year 2004 continuing to the present year 2009 was initiated by the defendants at a "ground level" and a "top down" level, simultaneously, per a specific policy, pattern and practice of discrimination, and persists, which remains a significant issue of public importance. The amount of disparate impact in 2009 service dollars to African-Americans has dropped $31.5 million in the San Francisco Bay Area.

XXXIV.        A "ground level" conspiracy spear-headed by a single individual acting outside the scope of his employment as a non-management non-profit corporation employee with the title of "business advisor" – a vague and misleading guise for silent conspirator during the case of the events described by this complaint and report – has become so pervasive gaining momentum and undue influence as to create a pattern and practice of discrimination by race and class. The conspiracy gained so much momentum that LCD/Opportunity Fund officers, managers, directors were forced to join the conspiracy in order to cover-up, evade and conceal the invidious actions and influence of a single individual employee.

XXXV. Further, the pervasiveness of the conspiracy sponsored by this single individual described in this individual complaint as a social conspiracy is precluded, or co-jointly included, and is deep rooted, or paralleled in a greater economic conspiracy ultimately fostered by corporate self-dealing and the willful evasion by the defendants of US Congressional and other government intent, creates a vacuum by which all the defendants, defendant affiliates, sponsors, funders, investors, et al, "jump on the bandwagon" of this new "wild wild west" scenario of banking without regulation and the wanton and reckless promise of tax credits. Banking, finance, corporation Law and issues are also directly affected and/or violated by the defendants' pervasive conspiracy to which this complaint and report serves to draw attention, exposing this crime and/or civil wrong against the social and economic interests of the people of the United States of America. LCD/Opportunity Fund and Microfinance appears to be used as a veil by the member bank collective for evasion and disguise.

XXXVI.        The growth of this kind of conspiracy at such a critical time and impasse becomes a critical issue of broad public interest and general public importance, mandating the intervention of the US Department of Justice, the Federal Trade Commission, the Office of Thrift Supervision, the FED, FDIC,

the US Department of State, the OCC, the even a special envoy on Microfinance to the Office of the

Presidency of the United States, and the California State Attorney General, which has already begun in

full force. This nation must eradicate any burgeoning threat against the American free enterprise system,

not unlike rooting out a cancerous tumor to the most basic principles of our democracy – freedom and

opportunity. And so, "We the People" must remain faithful to the ideals of our forebears, and true to our

founding documents, that life, liberty, and the pursuit of happiness must remain inalienable rights to all.

And to this truth so being, this petition and report enlists its contribution to this noble cause and purpose

of the United States of America.

# COMPLAINT

I, Brian Lawrence, allege:

## NATURE OF THE ACTION

1.      This action is filed pursuant to the "Equal Credit Opportunity" provision of the Federal Consumer Credit Protection Act, 15 U.S.C. § 1691 *et seq.*, to recover actual and punitive damages, declaratory relief, reasonable attorney's fees and costs of suit by reason of Defendant's violations of that Act. The jurisdiction of this Court is invoked pursuant to U.S.C.A. § 1691e (f) of the Act.

2.      Brian Lawrence, doing business as Brian Lawrence & Associates, hereinafter called Plaintiff, brings complaint against Lenders for Community Development (LCD) also known as the Opportunity Fund, its employees, executives, affiliates, agents, board of directors, advisors, member banks, associate lenders, US and State of California government funders and partners, local government funders and partners, philanthropic organizations and partners, community development partners, and Banking Corporation(s), hereinafter referred to as LCD, respectively.

3.      Plaintiff hereby asserts the following claims against the defendants in the above-entitled action:
   **(1.)** Prima Facie Violation of The Equal Credit Opportunity Act, 42 USC §§ 1691 et seq.,
   **(2.)** Fair Housing Act, 42 U.S.C. §§ 3601 et seq.
   **(3.)** Fair Employment and Housing Act, **CAL. GOVT. CODE § 12940 et seq.**
   **(4.)** Breach of Contract,
   **(5.)** Breach of Covenant of Good Faith and Fair Dealing,
   **(6.)** Breach of Fiduciary Duty – 2 Counts
   **(7.)** Tortuous Interference of Contract and Business Expectancy
   **(8.)** Conspiracy
   **(9.)** Fraud and Deceit - 2 Counts
   **(10.)** Allegation of Confidential Relationship Raising Presumption of Undue Influence and Constructive Fraud, **California Civil Code § 1573(1) and § 1575(1)**
   **(11.)** Discrimination - Race and Class, UnRuh Civil Rights Act
   **(12.)** Intentional Infliction of Severe Emotional and Economic Distress,

1
      (13.) Negligent Supervision, 4 Counts
      (14.) Discrimination, Violation of **42 U.S.C. §§ 1981 & 1982,**

2
      (15.) Violation of **42 U.S.C §§ 1983** Deprivation of Rights, 2 Counts

3
      (16.) Violation of **42 U.S.C. §§ 1985** Conspiracy to Interfere with Civil Rights,
      (17.) Violation of **42 U.S.C. §§ 1986** Neglect to Prevent Conspiracy to Interfere with Civil

4
          Rights,

5

6

7
4.      This action is simultaneously brought for Preliminary Injunction, Permanent Injunction and

8
damages, for violation of Title VI of Civil Rights Act of 1964.

9

10

**JURISDICTION**

11
5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 1367(a).

12
This action is authorized and instituted pursuant to 15 USC §1691e (f), 15 USC §§7201-7266, and 42

13
USC §§ 14503(f), and 42 USC §§1981, 1982, 1983, 1985, 1986, 2000, and 18 U.S.C. §§ 1961-1968.

14
6. Additionally, this Complaint, its causes of action, and counts are brought and filed under the following

15
statutes and jurisdictions:

16
      **The Unruh Civil Rights Act - California Civil Code §§ 51, 52(e), Civ. Code §§ 51, 51.5, 51.7,**

17
**52, 52(a) Civil Code §§ 3294, Corp C §§ 5047.5, §§ 52, 50, §§ 5231(a), 17231(a), 9241(a), Corp C**

18
**§§ 5210 and 7210, Code Civ.Proc. §§ 425.10, Civ.Code §§ 3333, Civ. Code §§ 3294, Civ. Code §§**

19
**3294(c), Civ.Code §§ 1573(1), §§1575(1), Civ.Code §§ 1714(a), Corp C §§ 14002, The Davis-**

20
**Sterling Act (CC§§ 1350-1376), The Sarbanes-Oxley Act of 2002 (15 USC §§ 7201-7266), 42**

21
**USC  14503(f), The Small Business Act, 15 USC §§ 631 et seq., Sections 43 (a)(1)(A)&(B) Of The**

22
**Lanham Act, 15 U.S.C. §§ 1125, 42 USC § 14503(f), the Truth in Lending Act, and the Fair**

23
**Credit Reporting Act.**

24

25

**INTRADISTRICT ASSIGNMENT**

26
7.      The credit practices alleged to be unlawful were committed within the State of California, City

27
and County of San Francisco, within the jurisdiction of the Superior Court for the San Francisco Judicial

28
District, Unlimited Civil Jurisdiction, State of California, County of San Francisco, and the United States

29
District Court for the Northern District of California.

30

BLAA vs. LCD -                             20

**PARTIES**

8.     Plaintiff is an individual, duly licensed by the State of California to do business as a Private Investigations company by the State of California Department of Consumer Affairs Bureau of Security and Investigative Services.  Plaintiff is a resident of the State of California, County of Alameda, and is of African-American decent.  At all relevant times, Plaintiff was an eligible, qualified, and creditworthy applicant for business credit.

9.     At all relevant times, Plaintiff has operated as a low and/or lower income self-employed individual in the County of Alameda, State of California, and met the definitions and criteria of a "socially and economically disadvantaged individual" seeking business ownership and economic development under federal law.

10.     Defendant Lenders for Community Development ("LCD") is an entity of unknown type doing business in the City and County of San Francisco.  LCD operates as a special purpose credit program targeted to low-income minority small business owners to which Plaintiff is a target member.

11.     Defendant LCD is certified as a Community Development Financial Institution (CDFI) by the US Department of Treasury and is licensed by the California Department of Corporations as a Finance lender. Defendant LCD partners with and is funded by member banks, US government, local government partners, and philanthropic investors as a multi-bank community development corporation.

12.     Defendant Eric Weaver ("Weaver") is LCD's founder and executive director and is a white male.

13.     Defendant Devin McAlpine ("McAlpine") is employed by LCD as a Business Advisor and is a white male.

BLAA vs. LCD -                                                                                      21

14.     Defendant William Cardenas ("Cardenas") is employed by LCD as a Loan Consultant and is a Hispanic-American male.

15.     Defendant Anthony Chang ("Chang") is employed by LCD as Micro-Finance Department manager and is an Asian-American male.

16.     Defendant Northern California Small Business Financial Development Corporation (NORCAL FDC), herein after referred to as NORCAL FDC, is an entity of unknown type, chartered and regulated by the State of California Technology, Trade, and Commerce Agency's Office of Small Business to provide loan guarantees to financial institutions throughout the State of California and provides guarantees to surety companies, and is also a certified Community Development Entity (CDE).

17.     Defendant Arthur Washington ("Washington") is vice president of NORCAL FDC, as well as a Board of Director/Advisory Board Member of LCD, and is an African-American male.

18.     Defendant(s) LCD Member Banks include:

I.      **Bank Leumi USA, Bank of the West, Bridge Bank, Cathay Bank, Citibank (West), FSB, City National Bank, Comerica Bank, First Bank, Fremont Investment & Loan, Greater Bay Bank, NA, Guaranty Bank, Heritage Bank of Commerce, Manufacturers Bank, Mid-Peninsula Bank, Mizuho Corporate Bank of California, Northern Trust Bank of California N.A., Peninsula Bank of Commerce, Silicon Valley Bank, Santa Clara Valley National Bank, The Private Bank of the Peninsula, The Summit National Bank, United Commercial Bank,** et al LCD member banks;

19.     Defendant(s) LCD Board of Directors Include:

II.     **Hilary Abell,** Women's Action to Gain Economic Security- WAGES, **Roxann Burns,** Greater Bay Bancorp, **Patricia Foster,** City of East Palo Alto, **Linda Gardner,** Alameda County Housing and Community Development Department, **Venessa Henlon,** City of San Francisco, **Dave Jones,** Silicon Valley Bank, **Dyane Matas,** Chair City of Fremont Redevelopment Agency (Retired), **Marjorie Matthews,** Santa Clara County Office of Affordable Housing, **Harrison Miller,** Summit Partners, **David Okazaki,** Manufacturers Bank, **Nancy Ragey,** Independent Consultant to Non-profit and Philanthropic Organizations,

Craig Robinson, Greater Bay Bancorp, Susan Roberts, Citibank, Otis Watson, Comerica Bank-California, et al Board of Directors.

20.    LCD Board of Advisors includes:

III.    Nancy Andrews, President and CEO, Low Income Investment Fund, Bud Colligan, Accel partners, Bill Gurley, General Partner, Benchmark Capital, Peter Hero, President, Community Foundation Silicon Valley, Mark Leslie, Lecturer, Stanford University, Founder and CEO, Veritas Software, Lisa Mensah, Executive Director, Aspen Institute Initiative on Financial Security, John A. Sobrato, Chairman, Sobrato Development Companies, et al LCD Board of Advisors,

21.    LCD Small Business Loan Committee members include:

IV.    Tom Arnold, Vice President Bank of the West, Mark Cota, Vice President, Commercia Bank, Wes Jost, Vice President Greater Bay Bancorp, Andrew Lee, Silicon Valley Bank, Tom Nguyen, Business Banking Manager, Citibank, Mark Ruiz, Vice-President Heritage Bank of Commerce, Juan Vigil, Development Enhancement Special Fund Manager, City of San Jose, Arthur Washington, NORCAL FDC,

22.    Defendant(s) LCD Community Partners include:

V.    California Capital Access Program, Catholic Charities of Santa Clara County, Center for Venture Philanthropy, A Division of the Peninsula Community Foundation, Child Care Coordinating Council of San Mateo County, Citibank, City of San Jose Office of Economic Development., City of San Jose Redevelopment Agency, Comerica Bank, Community Foundation Silicon Valley, County of San Mateo, DeAnza College, Family Service Agency of San Mateo County, First Five of Santa Clara County, Franklin-McKinley Education Foundation, Greater Bay Bancorp, Heritage Bank of Commerce, Housing Trust of Santa Clara County, LIFETIME, Mayfair Neighborhood Improvement Initiative, One East Palo Alto, Pacific Community Ventures, Samaritan House, San Jose Small Business Development Center, Silicon Valley Bank, Small Business Administration, SBA - Cisco Systems - San Jose Entrepreneur Center, Sobrato Foundation, Start Up, Wilson, Sonsini, Goodrich, and Rosati, et al LCD Community Partners

23.    At all times pertinent hereto, the Defendants, in the course of their business, regularly extended, offered to extend, and arranged for the extension of business credit to low and/or lower income persons and businesses in the form of business loans, lines of credit, confidential business, financial, and socio-economic advice.

24.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that plaintiff's injuries were proximately caused thereby.

## AGENCY, JOINT VENTURE, ALTER EGO

25.      Plaintiff is informed and believes and thereon alleges that at most times herein mentioned certain defendants, named herein, including DOES 1-100, acted as the agent, joint venturer, alter ego, and/or employee of each of the above and remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency, with respect to the acts, violations, and common course of conduct alleged herein.

## SCOPE

26.      Plaintiff is informed and believes and thereon alleges that at certain times herein mentioned certain defendant(s), in doing certain things hereinafter alleged, acted outside the course and scope of such agency.

27.      Defendant DM acted both inside and outside the scope of his LCD employment in committing the act of discrimination on the basis of race and civil conspiracy.

28.     Defendant WC acted inside the scope of his LCD employment in committing the act of discrimination on the basis of discrimination by "class" pertaining to Plaintiff's receiving public assistance as part of his earnings record.

# CONSPIRATORS

29.     Through doctrine of civil conspiracy, certain defendants are jointly and severely liable for all the acts of conspiracy, and as co-conspirators, and alter-egos, and supervising entities, and management consultants.

# CO-CONSPIRATORS

30.     Various persons, individuals, partnerships, corporations, and associations, both named and not named as defendants in this Complaint, and unknown to the Plaintiff, have participated as co-conspirators in the violations alleged herein and have performed acts and made statement in furtherance thereof.

31.     At certain times during this complaint, other Defendants acted both inside and outside the scope of LCD employment, at some times exclusively and/or in concert, and inside and/or outside the defendant(s)' sponsored conspiracy, both separately and/or co-jointly.

# BACKGROUND FACTS

32.     In mid December 2006, Plaintiff met with NORCAL FDC vice-president Washington for the purposes of obtaining business credit.

BLAA vs. LCD -

25

33.     Plaintiff presented Washington his recent credit score report and analysis from the three credit reporting agencies – Experian, Trans Union, and Equifax, a comprehensive business plan, recent tax information, banking information, and resume.

34.     Based on this presentation and application for credit, Washington reviewed and discussed the business venture of the Plaintiff.  Plaintiff's business was both a start-up business and a current business with at least two years of business and/or self-employment experience.

35.     After careful consideration, Washington, agreed to underwrite a business loan for $10,000 as a 100% loan collateral guarantee in support of a loan through one of NORCAL FDC's lending partners, Defendant LCD.  The only condition placed on Plaintiff was completion of LCD's "paperwork".

36.     Washington contacted Chang of LCD in regards to the above contract, and directed Plaintiff to contact Chang and complete the paperwork.

37.     At that time, Washington was a member of the Defendant LCD's Board of Directors per LCD's website, and assertion by Washington.

38.     Plaintiff corresponded with Chang, and was then scheduled to meet with LCD loan consultant William Cardenas.

39.     Plaintiff was emailed an LCD loan application which stated: "Small Business Micro-Loan Application – 'Loans up to $10,000' ", and "LCD typically provides an approval/decline within 2-3 weeks within meeting with LCD business advisor".

40.     At all relevant times, Defendants acted in the role of financial, business, and socio-economic advisors regularly receiving confidential information from persons and did receive such confidential information from the Plaintiff, and make promise to Plaintiff to advise Plaintiff on these matters.

41.     Per his discussions with Washington, Plaintiff reasonably understood that the "paperwork" which Plaintiff learned to be the above mentioned Small Business Micro-Loan Application to be pre-approved.

42.     On Dec 26th, 2006, Plaintiff met with LCD employee/loan consultant William Cardenas at 1095 Market Street, San Francisco, CA, and completed the Small Business Micro-Loan Application for the $10,000 business loan/line of credit per information requested by LCD.

43.     On that date, Plaintiff had a credit score of 656 per the credit scoring system utilized by LCD.

44.     Plaintiff informed Cardenas that Plaintiff's past income and earnings record included public assistance benefits.

45.     Plaintiff supplied WC all the required documentation there at the meeting and additional documentation later requested by WC in a timely fashion, not later than December 28th, 2006.

46.     Plaintiff was then required to meet with LCD employee and business advisor McAlpine.

47.     On January 4th, 2007, Plaintiff met with McAlpine at 1095 Market Street, San Francisco, Ca.

48.     At that meeting, McAlpine was arrogant, antagonistic, disrespectful, and condescending towards Plaintiff. This fact completely contradicted the favorable and congenial introduction and exchange between Plaintiff and all representatives of LCD previous to this meeting.

49.     McAlpine refused to review or receive Plaintiff's comprehensive business plan, requesting instead a shorter "marketing plan".

50.     Plaintiff completed the requested marketing plan and both emailed and US mailed a copy of the marketing plan to both McAlpine and Cardenas on or about January 16th, 2007.  This marketing plan included a complete marketing proposal/plan from a professional marketing consultant whom the Plaintiff consulted as a professional advisor, including SBA/SCORE.

51.     Defendant LCD neither approved nor declined Plaintiff's completed credit application within the time allowed by Law.

52.     On March 20th, 2007, Defendant LCD mailed Plaintiff a NOTICE of ADVERSE ACTION officially rejecting Plaintiff's credit application.

53.     Defendant LCD stated as the reason for denial: **"Lack of established earnings record,"** though LCD had full knowledge that Plaintiff received public assistance as part of Plaintiff's earnings record, at times all and at times in part, including housing assistance.

54.     Plaintiff alleges on information and belief that Defendants in fact denied Plaintiff's credit application due to the fact that he is of African-American descent.

55.     It is beyond dispute that the African-American community has long been the victim of discriminatory banking practices. Generations of African-Americans have been deprived the opportunity to participate in the American dream by banks that refused to give them business and mortgage loans

simply because of the color of their skin, or placed them in unfavorable financial positions and loans that

decimate them financially. The majority of the Defendant member banks listed have been at the center of

previous government and private studies and litigation demonstrating discrimination by race and disparate

treatment against African-Americans.

56.     Beginning in the year, approximately, 2005, and during the time of discrimination by race of the

Defendants against the Plaintiff, the Defendants executed a discriminatory policy, pattern and practice

reducing service to African-Americans from 31% down to 10%. This pattern of racial discrimination

continues to this present time.

57.     Further, Defendants discriminated against Plaintiff on the basis that Plaintiff received

Public assistance, and belonged to a "class" of persons receiving public assistance, and by refusing to

count or consider public assistance income the same way as other income.

58.     As a result of Defendants' actions, Plaintiff was denied the opportunity to grow his business and

access to such services and financial counseling and opportunity for homeownership through defendants'

programs and other Microfinance services.

59.     Plaintiff was creditworthy and qualified to receive the loan and services he sought from the

defendants LCD/Opportunity Fund and the collective member banks et al.

# FIRST CAUSE OF ACTION

VIOLATION OF THE EQUAL OPPORTUNITY CREDIT ACT, and THE CONSUMER

CREDIT ACT, 15 U.S.C. § 1691 *et seq.*,

60.     Plaintiff incorporates by reference paragraphs 1-59 as though fully set out herein and further alleges as follows:

61.     The Equal Credit Opportunity Act was first enacted in 1974 as a consumer protection statute prohibiting discrimination in the issuing of credit.

62.     The Equal Credit Opportunity Act, 15 U.S.C. § 1691 (1976), makes it unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race, and on the basis of a credit applicant receiving or having received public assistance as part of an established earnings record. Section 1691e of this Act allows a civil action to be brought by any person damaged under the Act. The Act has been broadly construed by the courts in order to make effective its provisions to protect consumers.

63.     The defendants are creditor(s) within the meaning of 15 U.S.C. § 1691(e).

64.     Defendants refused to approve Plaintiffs' loan application because Plaintiff is African-American and because Plaintiff's earnings record has included public assistance. Defendants have, therefore, discriminated against Plaintiff on the basis of his race or color, and "economic class disposition and/or earnings record" in violation of the Equal Credit opportunity Act, 15 U.S.C., § 1691, et al.

65.     As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff's, Plaintiff has suffered, and continues to suffer, great embarrassment, humiliation and emotional distress.

66.     Plaintiff possessed adequate income, a 100% collateral guarantee by State of California chartered and regulated Community Development Entity (CDE) which was and is an alter ego partner sufficient to support the loan, strong recommendation and urging by a loan committee advisor, adequate credit history to qualify for the small business micro credit loan requested, public assistance income, comprehensive business plan, additional and specialized marketing plan not generally required, licensed experience and history of professional business acumen in the field of business for which Plaintiff sought the small business micro-credit loan, and the Defendant(s) were very clearly aware of these facts.

67.     Defendant's discrimination against Plaintiffs was intentional, willful, conspiratorial, and malicious.

68.     The Defendants violated the Equal Credit Opportunity Act and Regulation B thereunder in that:

        (i) Defendants willfully refused to accept and consider relevant information offered by Plaintiff
             for credit application.

        (ii) Defendant(s) failed to respond to Plaintiff's continual requests inquiring into status of credit
             application.

        (iii) Defendants failed to notify applicant of adverse action within 30 days of completed
             application.

        (iv) Defendants failed to disclose to applicant of right to request reasons for adverse action.

        (v) Defendants failed to disclose that complaint can be directed to the FTC.

(vi) Defendants failed to disclose current and proper address of regulatory agency responsible for

administering compliance with this Law.

(vii) Defendant(s) – EW willfully refused to respond to Plaintiff's inquiries into application

status.

(viii) After Plaintiff made written request within prescribed time period, on several occasions, to

receive deciding and specific criterion, factors, and credit scoring system (in writing) that

led to a.) Denial of credit, b.) Less than favorable and/or unreasonable terms offered as a

fraudulent attempt to cover-up original adverse action and discrimination against

Plaintiff/credit applicant, Defendants failed to supply Plaintiff with requested information

and failed to remedy or reverse their violation(s) and failure.

(ix) Defendants willfully refused to comply with notification requirements after being informed

of their error and discrimination.

(x) Defendants did discriminate against Plaintiff on the basis of race and class.

69.   **Defendants have violated the Equal Credit Opportunity Act, Regulation B, the Consumer**

**Credit Protection Act, and specifically 12 C.F.R. Ch.II, 202.2(f) in that:**

I.     Not only did defendants fail to exercise reasonable due diligence in obtaining information

to complete Plaintiff's credit application, which was completed by Plaintiff despite this

lack of diligence on part of the defendants on December 26th, 2006, and December 28th,

2006, defendants fraudulently, and through willful misconduct, alleged that Plaintiff's

application was incomplete on May 16th, 2007 after answering Plaintiff's application as

complete on March 20th, 2007.

II.    Defendants attempted to evade compliance with ECOA, Consumer Credit Protection Act

et al through, malicious, oppressive, and conspiratorial practice of issuing purposefully

vague, fluid, and expanding guidelines and definition of what constitutes a complete application. In this regard, Defendants conspired to deceive Plaintiff.

III.   Defendants attempted to evade compliance with ECOA, Consumer Credit Protection Act et al by regularly engaging a credit evaluation system that is non-statistically sound, and non-judgmentally sound, discriminatory, non-empirically derived, and as a result, otherwise non-demonstrate ably sound, which openly induces discrimination, prejudice, and disparate affect against a credit application.

70.    **Prima Facie violation of the Equal Credit Opportunity Act, Regulation B, the Consumer Credit Protection Act, and specifically 12 C.F.R. Ch.II, 202.2(f) is established by the following facts:**

(i)  Plaintiff is African-American.

(ii)  Plaintiff's established earnings record has included public assistance.

(iii)  Plaintiff's credit application was creditworthy.

(iv)  Plaintiff's credit application was 100% Guaranteed by State of California Chartered collateral - also constituting public assistance - and pre-approved per implied contract.

(v)  The defendant rejected the Plaintiff's credit application despite a favorable credit rating, State of California chartered 100% collateral guarantee, and pre-approval per implied contract.

(vi)  The defendant demonstrates a pattern and practice of discrimination against African-Americans in that African-American clients served by the defendants dropped from 31% to 10% in the two years that the defendant DM, who is white, became employed by the defendant LCD.

(vii)  The defendants extended or arranged for the extension of credit to other applicants with a similar credit history, who were not African-American and male.

(viii)  Plaintiff suffered severe injury in this case of the denial of credit, detrimental reliance on Defendants' unreasonable and untimely credit answer, damage to credit reputation and financial condition, embarrassment, and humiliation stemming from the rejection and untimely answer.

71.    Plaintiff is entitled to court costs, together with reasonable attorney's fees as determined by the Court under 15 U.S.C. § 1691e(d).

WHEREFORE, Plaintiff prays:

    1.) For actual damages in the amount of $16,453*

    2.) For general damages in the amount of $93,109;**

    3.) For Compensatory damages in an amount to be proved at trial;

    4.) For special damages - loss of earnings, credit, and earning capacity;

    5.) For statutory damages in the amount of $10,000;

    6.) For Appropriate injunctive relief;

    7.) For exemplary or punitive damages;

    8.) For attorney's fees and costs of the suit herein incurred; and

    9.) For such other and further relief as the court may deem proper.

* $6,641 + $9,812 - debt incurred and revenues lost to detrimental reliance.
** On theory of opportunity for revenues lost in 2007 & 2008 described in Plaintiff's marketing plan:
      $41,762 + $51,347 = $ 93,109.  Albemarle Paper Co. vs. Moody 422 US 405.

## SECOND CAUSE OF ACTION

VIOLATION OF THE FAIR HOUSING ACT,

**42 U.S.C. §§ 3601 et seq.**

72.    Plaintiff incorporates by reference paragraphs 1 through 71 as though fully set out herein and further alleges as follows:

73.    This claim is brought under the Fair Housing Act, 42 U.S.C. §§ 3601, et seq.  Section 3613(a) (1) (A) of this Act allows a civil action to be brought by any person damaged. Under the Act, sections

3605(a) and (b) (1) provides that it shall be unlawful for any person or entity whose business includes engaging in residential real-estate-related transactions to discriminate against any person in' making available such a transaction, or in 'the terms of such a transaction, because of race or color.

74.      Defendants regularly approve home loans or real-estate-related transactions for business credit clients, particularly Affordable housing transactions, and this fact was offered as an incentive for Plaintiff to apply and fill out paperwork for business credit from the Defendants, particularly defendants AW and AC.

75.      Defendant AW made Plaintiff aware that with the defendant LCD, Plaintiff would have access to affordable housing and mortgage lending. Plaintiff depended and relied on this prospective economic advantage.

76.      Business property was sought as part of the Plaintiff's business plan, additional marketing plan demanded by the defendant, and credit application.

77.      Defendants' refusals to approve Plaintiff's loan application were motivated by discrimination. The primary bases for Defendant's refusal to approve Plaintiff's loan were that Plaintiffs are African-American, and that Plaintiff operated his business out of a property that was located in neighborhoods in which African-Americans constitute a substantial percentage of the population.

78.      Defendant's refusal to make home loans because of Plaintiffs' race and the racial composition of the neighborhoods in which they reside denied Plaintiffs' rights secured under 42 U.S.C. §§ 3601, et seq.

79.     As a direct and proximate result of Defendant's unlawful violation of 42 U.S.C. §§ 3601, et seq, Plaintiff has suffered and continues to suffer great embarrassment, humiliation and emotional distress.

80.     Defendant's violation of 42 U.S.C. §§ 3601, et al was willful and wanton, and motivated by ill will and malice.

WHEREFORE, Plaintiffs ask judgment against Defendant for:

      (a) Actual ,damages in an amount to be proved at trial;

      (b) Compensatory damages in an amount to be proved at trial;

      (c) Punitive damages;

      (d) Appropriate injunctive relief;

      (e) Reasonable attorneys' fees and costs of suit; and

      (f) Further relief as this Court deems just and proper.


# THIRD CAUSE OF ACTION

## THE FAIR EMPLOYMENT AND HOUSING ACT (FEHA)

### CAL. GOVT. CODE § 12900 et seq.

[DISCRIMINATION]

81.     Plaintiff incorporates by reference paragraphs 1 through 71 as though fully set out herein and further alleges as follows:

81A.    The Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) is California's primary law prohibiting discrimination in employment, housing, and public accommodation. In enacting the FEHA, the Legislature declared that it is a civil right to seek, obtain, and hold employment without discrimination, and that it is the public policy of this state to protect and safeguard such rights and opportunities.

81B.    Due to the Defendants unlawfully denying the Plaintiff much needed business credit, and start-up capital, on the basis of race discrimination and discrimination in receiving public assistance, Plaintiff's self-employment and opportunity for successful self-employment was adversely affected.

81C.    The FEHA prohibits employment discrimination, harassment and retaliation based upon race...".

81D.    Plaintiff complained of discrimination and the violation of his rights by the defendants, to the Defendants EW and DM, but neither responded to the Plaintiff's complaint.

81E.    Plaintiff filed timely complaints against the Defendants with the Office of the Attorney General alleging discrimination by race and class.  Thereafter, Plaintiff received from the Office of the Attorney General, notification of his civil rights including the right to sue in the Courts of the State of California, against the Defendants for which complaint had been filed.

81F.    Defendants' acts were malicious, oppressive or fraudulent with intent to vex, injure, annoy, humiliate and embarrass Plaintiff, in conscious disregard of the rights and financial condition of Plaintiff, and to further induce or force Plaintiff to give up his application for credit with the Defendants.

81G.   The Defendants, in furtherance of Defendants' ratification of the wrongful conduct of a policy, pattern and practice of discrimination, sought to induce business and economic failure in Plaintiff so to as a malicious plot and scheme to evade any charge of discrimination by attacking Plaintiff's credit worthiness. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants.

81H.   By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff has necessarily brought this civil lawsuit, and upon the advice of private attorneys, to prosecute within the action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

81I.   As a result of Defendants and each of their actions, Plaintiff sustained economic damages to be proven at trial.  As a further result of Defendants' and each of their actions, Plaintiff suffered emotional distress; resulting in damages to be proven at trial.

82.   The above discriminatory conduct violates Government Code §§ 12940 et seq. and California public policy and entitles Plaintiff to all categories of damages, including exemplary or punitive damages.

WHEREFORE, PLAINTIFF prays for relief as follows:

    1.   For general damages according to proof, however, no less than the jurisdictional limit of this court;

    2.   For special damages in amounts according to proof;

3.      For punitive damages in amounts according to proof;

4.      For attorneys' fees as provided by law;

5.      For prejudgment, post-judgment and other interest as provided by law;

6.      For cost of suit incurred herein; and

7.      For such other and further relief as the Court deems fair and just.

# FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT – Arthur Washington

83.     Plaintiff realleges and incorporates by reference paragraphs 1 through 82, above.

84.     On or about December 20th, 2006, Plaintiff and Arthur Washington (AW) entered into an oral agreement by which AW would arrange for or guarantee a pre-approved credit application through defendant LCD by which LCD would loan to Plaintiff $10,000 based on AW's evaluation of Plaintiff's established creditworthiness, and on AW's authority as an LCD board member. A contract between AW and Plaintiff was made to extend approval of Plaintiff's application for credit through defendant LCD by securing a $10,000 small business micro loan to Plaintiff that would be 100% guaranteed by Defendant NORCAL FDC per all the terms and conditions of Federal and State of California charter for extending small business micro lending and access to capital for small businesses to socially and economically disadvantaged individuals.

85.     Much to his dismay, and detrimental reliance, Plaintiff soon learned that pre-approved credit did not supersede the normal credit application process of final approval or denial in a credit application, and

that the implied contract with Defendant AW existed outside the scope of authority and professional

relationship pertaining to Defendant LCD.

86.     Defendant AW did have the authority to offer and contract a NOR CAL FDC 100% collateral

guarantee on an LCD loan.

87.     In effect, implied contract had the force and effect of a guarantee for good faith and fair dealing

in a credit application evaluation.

88.     Plaintiff relied on this implied contract to his detriment.

89.     Defendant AW is, and was at all times during this complaint, an LCD board of director/board

member, and a NORCAL FDC vice president.

90.     Plaintiff met the criterion of a socially and economically disadvantaged individual and self-

employed person seeking small business funding and support services per US Small Business Act, SBA

administration rules and policies as set forth in Section 121 of Chapter 1 of Title 13 of the Code of

Federal Regulations, the Equal Credit Opportunity Act, State of California Technology, Trade, and

Commerce Agency's Office of small business charter, Defendant LCD's advertised policies of eligibility,

and of a low-income community member per the Community Development Entity (CDE) certification

stated mission.

91.     Defendant AW informed Plaintiff that Plaintiff's business proposal, plan, history, experience, and

credit history was sufficient on its own merits to secure funding through not only Defendants LCD and