Martyn Collins, SBN 196275
All-Access Law
P.O. BOX 90323
Pt. Richmond, CA 94807-0323
Phone: (510) 621-3163
Email: martylawyer@gmail.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NORTHERN CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Brian Lawrence dba Brian Lawrence & Associates (BLAA),<br><br>Plaintiff,<br><br>vs.<br><br>Opportunity Fund, formerly known as Lenders for Community Development and its agents, Eric Weaver, Devin McAlpine, William Cardenas, Anthony Chang and Arthur Washington, its banking partners [Citibank(West), FSB, Bank of America, Bank of the West, Silicon Valley Bank et al] Banking Corporations, & DOES 1-100,<br><br>Defendant(s) | Case No.: **C10-cv-619 CRB**<br><br>**FOURTH AMENDED COMPLAINT FOR DAMAGES, PRELIMINARY AND PERMANENT INJUNCTION FOR:**<br><br>1. **VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT;**<br>2. **RACIAL DISCRIMINATION (42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Date: September 24, 2010<br>Judge: Hon. Charles R. Breyer<br>Courtroom 8, 19th Floor |

## INTRODUCTION

1. Plaintiff brings this action in his own capacity seeking injunctive, declaratory and other relief against Opportunity Fund, also known as Lenders for Community Development, hereinafter referred to as Opportunity Fund, its individual agents Eric Weaver, William Cardenas, Devin McAlpine, Anthony Chang, and numerous associated lending and banking institutions who are engaged lending practices in low-income and minority communities that have discriminatory impacts regarding race in its operational business administration, including Opportunity Fund's credit and loan qualification policies,

practices and decision-making.  Additionally, Opportunity Fund makes its business advisory financial education services to low-income minorities on a selective and discriminatory basis.  According to Opportunity Fund's Lenders for Community Development website between 2003 and 2006, African-Americans small businesses and entrepreneurs accounted for 31% to 26% of the loans the organization approved.  In 2007,  Lenders for Community Development became Opportunity Fund.  According to information published by Opportunity Fund in October 2007, loans to African-American entrepreneurs plunged from the previously marketed percentage of 27% to 10% of its portfolio, at a percentage that Opportunity Fund continues to represent is the case today.

2. Published research in 1998 from David Blancheflower at the National Bureau of Economic Research "found significant evidence that black-owned businesses ...face impediments to obtaining credit that go beyond observable differences in their credit worthiness. " Moreover they state that, "[t]his differential would traditionally be attributed to discrimination."

3. The  2010 study "Credit Cards, Race and Entrepreneurship" by Aaron Chatterji and Robert Seamans regarding the use of credit cards as a financing mechanism by black entrepreneurs, found evidence "consistent with a scenario in which blacks face discrimination through regular lending channels."  Explaining that credit cards allow black entrepreneurs "to circumvent discrimination, or the fear of discrimination, by avoiding face-to-face applications for financing. "

4. In the context of credit markets, economic analyses of discrimination is fittingly explained in the analyses contained in Gary Becker's The Economics of Discrimination (1957), where the act of discrimination is translated into financial terms. In Becker's analysis discrimination, results from the desire of owners, workers, or customers to avoid contact with certain groups (Discrimination in the Small Business Credit Market).  As the study that draws on Becker's analysis further explains, "Discrimination occurs whenever the terms of a transaction are affected by personal characteristics of the participants that are not relevant to the transaction. By far, the most commonly considered characteristics

are those of race and gender...In credit markets...it might translate into loan approvals differing across racial groups with otherwise similar financial backgrounds. "

5. The discrimination practiced against black entrepreneurs is not just a coincidence or an illustration of the collective creditworthiness of this group of individuals.  Rather, it is a result of lending communities unequal treatment of blacks in credit markets. African-American entrepreneurs seeking financing in credit markets should be treated equally with any other entrepreneurs seeking financing with the same qualifications, regardless of race or ethnicity.

**THE PARTIES**

6. Plaintiff Brian Lawrence is an individual, licensed by the State of California to do business as a Private Investigations company by the State of California Department of Consumer Affairs Bureau of Security and Investigative Services.  Plaintiff is the sole proprietor of Brian Lawrence & Associates.  Plaintiff's principle place of business is located in Oakland, California. Plaintiff is a resident of the State of California, County of Alameda, and is of African-American decent.

7. At all relevant times, Plaintiff has operated as a low and/or lower income self-employed individual in the County of Alameda, State of California, and met the definitions and criteria of a "socially and economically disadvantaged individual" seeking business ownership and economic development opportunities under federal law. Brian Lawrence individually, and his business Brian Lawrence & Associates have been injured by the Defendants complained of herein.

8. Defendant Opportunity Fund formerly known as Lenders for Community Development, is a non-profit mutual benefit corporation organized under the laws of the State of California, with its principal place of business in San Jose, California.

9. Defendants Opportunity Fund under its former name Lenders for Community Development "invests in people who are working to build financial, personal and shared

assets in low-income communities.[1]" Further, a stated purpose of the business is found on the application for Small Business Micro Loan application in which they describe themselves as "a non-profit that reinvests capital back in to low-income communities." Opportunity Fund alleges to "make loans to growing businesses that cannot qualify for loans from conventional banks."

10. Defendant Opportunity Fund in all of its forms past and present operates as a special purpose credit program targeted to low-income small business owners to which Plaintiff is a target applicant.

11. Defendant Opportunity Fund is certified as a Community Development Financial Institution (CDFI) by the US Department of Treasury and is licensed by the California Department of Corporations as a Finance lender.  Defendant Opportunity Fund partners with and is funded by member banks, US government, local government partners, and philanthropic investors as a multi-bank community development corporation.

12. Defendant Eric Weaver ("Weaver") is Opportunity Fund's founder and executive director.

13. Defendant Devin McAlpine ("Mr. McAlpine") is employed by Opportunity Fund as a Business Advisor.

14. Defendant Mr. William Cardenas ("Mr. Cardenas") is employed by Opportunity Fund as a Loan Consultant.

15. Defendant Anthony Chang ("Chang") is employed by Opportunity Fund as Micro-Finance Department manager.

16. Defendant Northern California Small Business Financial Development Corporation (NORCAL FDC), herein after referred to as NORCAL FDC, is an entity of unknown type, chartered and regulated by the State of California Technology, Trade, and Commerce Agency's Office of Small Business to provide loan guarantees to financial

---

1   http://web.archive.org/web/20071014035235/www.l4cd.org/images/center_img_03.jpg

institutions throughout the State of California and provides guarantees to surety companies, and is also a certified Community Development Entity (CDE).

17. Defendant Arthur Washington ("Mr. Washington") is vice president of NORCAL FDC, as well as a Board of Director/Advisory Board Member of Opportunity Fund.

18. At all times pertinent hereto, the Defendants, in the course of their business, regularly extended, offered to extend, and arranged for the extension of business credit to low and/or lower income persons and businesses in the form of business loans, lines of credit, and business coaching services.

19. Plaintiff is ignorant of the true names and a capacity of defendants sued herein as Does 1-100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries were proximately caused thereby.

**AGENCY, JOINT VENTURE, ALTER EGO**

20. Plaintiff is informed and believes and thereon alleges that at most times herein mentioned certain defendants, named herein, including DOES 1-100, acted as the agent, joint venturer, alter ego, and/or employee of each of the above and remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency, with respect to the acts, violations, and common course of conduct alleged herein.

**JURISDICTION AND VENUE**

21. This is an action for violation of 42 U.S.C. §1691 *et seq.* (Equal Credit Opportunity Act) and 42 U.S.C. § 1981 *et seq.* (Civil Rights Act).  This Court has original jurisdiction over this action pursuant to 29 U.S.C. § 1331 (federal question).

22. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because each Defendant is an individual or a corporation subject to personal jurisdiction in this district.

23. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 1367(a). This action is authorized and instituted pursuant to 15 USC §1691e (f), 15 USC §§7201-7266, and 42 USC **§§** 14503(f)**,** and 42 USC §§1981, 1982, 1983, 1985, 1986, 2000, and 18 U.S.C. **§§** 1961-1968

### INTRADISTRICT ASSIGNMENT

24. The credit practices alleged to be unlawful were committed within the State of California, City and County of San Francisco, within the jurisdiction of the Superior Court for the San Francisco Judicial District, Unlimited Civil Jurisdiction, State of California, County of San Francisco, and the United States District Court for the Northern District of California.

25. The defendants in this complaint Opportunity Fund purport to be an American Micro-finance Institution (MFI), beginning in the State of California as a US Treasury Department and State of California certified Community Development Financial Institution (CDFI). As a quasi-government acting entity, the defendant(s) act and have acted under the color of state law and federal law both separately at times, independent and exclusively at times, and concurrently and co-jointly at times.

### COMPLAINT

26. This action is filed pursuant to the "Equal Credit Opportunity" provision of the Federal Consumer Credit Protection Act, 15 U.S.C. § 1691 *et seq.*, to recover actual and punitive damages, declaratory relief, reasonable attorney's fees and costs of suit by reason of Defendant's violations of that Act. The jurisdiction of this Court is invoked pursuant to U.S.C.A. **§** 1691e (f) of the Act.

27. Brian Lawrence, doing business as Brian Lawrence & Associates, hereinafter called Plaintiff, brings complaint against Opportunity Fund formerly Lenders for Community

Development, its employees, executives, affiliates, agents, board of directors, advisors, member banks, associate lenders, US and State of California government funders and partners, local government funders and partners, philanthropic organizations and partners, community development partners, and Banking Corporation(s), hereinafter referred to as Opportunity Fund, respectively.

28. Plaintiff hereby asserts the following claims against the defendants in the above-entitled action:

**(1.)** Violation of The Equal Credit Opportunity Act, **42 USC §§ 1691 et seq**., 

**(2.)** Discrimination, Violation of **42 U.S.C. §§ 1981 & 1982**,

**(3.)** Violation of **42 U.S.C §§ 1983** Deprivation of Rights, 2 Counts

**(4.)** Violation of **42 U.S.C. §§ 1985** Conspiracy to Interfere with Civil Rights,

**(5.)** Violation of **42 U.S.C. §§ 1986** Neglect to Prevent Conspiracy to Interfere with Civil Rights

29. This action is simultaneously brought for Preliminary Injunction, Permanent Injunction and damages, for violation of Title VI of Civil Rights Act of 1964.

## SCOPE

30. Plaintiff is informed and believes and thereon alleges that at certain times herein mentioned certain defendant(s), in doing certain things hereinafter alleged, and acted outside the course and scope of such agency.

31. Defendant Devin McAlpine acted both inside and outside the scope of his Opportunity Fund employment in committing the act of discrimination on the basis of race and class due to his sources of income.

## GENERAL FACTUAL ALLEGATIONS

32. Previous to December 22nd 2006, Plaintiff  was directed to the Defendants by State of California Technology Trade and Commerce Agency's Office of Small Business; an entity chartered and regulated by NORCAL FDC, with a collateral guarantee for a $10,000 small business loan, and for business and financial services in support thereof. Understanding that his contractual relationship via the collateral guarantee with the State

of California Technology Trade, and Commerce Agency's Office of Small Business was in valid and effective, Plaintiff pursued the contractual opportunity to receive the small business loan from Opportunity Fund.

33. Plaintiff was eligible, qualified, creditworthy, and collateral guaranteed to receive the loan and access to capital and business coaching and consultation services he sought from the defendants at Opportunity Fund.

34. In mid December 2006, Plaintiff met with NORCAL FDC vice-president Mr. Washington for the purposes of obtaining business credit for his business, Brian Lawrence and Associates.

35. Plaintiff presented Mr. Washington his recent credit score and credit reports from – Experian, Trans Union, and Equifax, as well as a comprehensive business plan, recent tax information, banking information, and resume.

36. At the above described meeting with Mr. Washington, Plaintiff originally sought funding in an amount of up to $25,000 for equipment, property, down payment in preparation for a SBA 504 real estate purchase loan, operating capital, and introductory market identity collateral, publicity campaign and general marketing expense in order to successfully convert his self-employment into a small business which would generate over $100,000 in revenues per year.

37. Based on this presentation and application for credit, Mr. Washington reviewed and discussed Plaintiff's business and proposal.  Mr. Washington considered Plaintiff's business proposal a strong candidate for start-up funding. Mr. Washington then agreed to issue a collateral guarantee by NORCAL FDC to a lender – namely, the defendant Opportunity Fund formerly known as Lenders for Community Development – to which Mr. Washington and NORCAL FDC regularly provide collateral guarantees.

38. $10,000 is the maximum amount offered through one of Mr. Washington's regular lending partners with NORCAL FDC, the micro-credit department at Opportunity Fund.

39.  Mr. Washington reasoned to Plaintiff that by applying for a lesser amount of up to $10,000 from the Defendants Opportunity Fund formerly known as Lenders for Community Development, that Plaintiff would avail himself to a wide array of financial services, including business coaching and consultation, an ongoing supportive financial relationship, and additional access to capital for everything from business to housing and real estate.

40. The only condition placed on Plaintiff was the completion of Opportunity Fund's "paperwork".

41. Mr. Washington contacted Mr. Anthony Chang of Opportunity Fundt, and directed Plaintiff to contact Mr. Chang and complete the paperwork.

42. Opportunity Fund's paperwork according to the then Lenders for Community Development Micro Loan Application, was comprised of a 4 page application, the applicants previous year personal income tax return and applicants last 6 months bank statements.  For existing businesses applying for a Micro Loan up to the maximum $10,000 additional information in the form of previous 2 years business income tax return and current year business income statement are requested.

43. At that time, Mr. Washington stated to Plaintiff that he was a member of the Opportunity Fund's Board of Directors. The dual role of Mr. Washington in his state agency capacity and as a board member of Opportunity Fund led Plaintiff to reasonably believe that start-up business funding and all of the Opportunity Fund financial services support as offered to its clients would in turn be available to his business.

44. On December 22nd, 2006, Plaintiff corresponded with Mr. Chang, and was then scheduled to meet with Opportunity Fund loan consultant Mr. Cardenas.

45. Mr. Washington informed Plaintiff to let him know if there were any problems or challenges in the application process.

46. Mr. Chang emailed the Opportunity Fund loan application to Plaintiff which stated: "Small Business Micro-Loan Application – 'Loans up to $10,000' ", and "Opportunity

Fund typically provides an approval/decline within 2-3 weeks within meeting with Opportunity Fund Business Advisor".

47. At all relevant times, Defendants acted in the role of financial, business, and socio-economic advisors regularly receiving confidential information from persons and did receive such confidential information from the Plaintiff, and make promise to Plaintiff to advise Plaintiff on these matters.

48. On Dec 26th, 2006, Plaintiff met with Opportunity Fund employee/loan consultant Mr. Cardenas at 1095 Market Street, San Francisco, CA, and completed the Small Business Micro-Loan Application.

49. On that date, Plaintiff had a credit score of 656 per the credit scoring system utilized by Opportunity Fund.

50. To complete the additional requirements as listed on the loan application, plaintiff provided 13 pages of financial information, which included the previously year personal income tax return, six months bank statements, current year bank income statements and year 2005 business tax return.

51. Plaintiff completed the final loan application requirement on January 4, 2007 when he met with Opportunity Fund Business Advisor and consultant, Devin McAlpine at 1095 Market Street, San Francisco, California.

52. Mr. McAlpine began the meeting by admonishing the Plaintiff to, "Don't just think you're gonna get this loan!".   Plaintiff explained that the loan was guaranteed by NORCAL FDC, and went on to describe the merits of his self-employment, and that he was a licensed professional seeking to upgrade/bolster his self-employment into a business where he could hire help to achieve the objectives described in his business plan.   Moreover, Plaintiff further detailed his personal life experiences and current circumstances so the Mr. McAlpine could understand Plaintiff's motivation in and interest in starting a business, his successes, challenges, goals and achievements.  Finally, Plaintiff explained that he was able to generate revenue without seed or start-up capital to

date.  Despite not reviewing the business plan from the Plaintiff Mr. Lawrence, in response to the Plaintiff, Mr. McAlpine simply said:  "you have no marketing acumen."

53. Plaintiff offered his business plan and resume, attempting to demonstrate to Mr. McAlpine that Plaintiff's strength was his business and marketing acumen, and that the challenge to Plaintiff's objective of converting his self-employment into a business that would create jobs was a lack of access to start-up capital. Plaintiff's business plan was developed with assistance from SBA/SCORE with whom Plaintiff met regularly receiving business advice. The business plan provided financial graphs, analysis, and ratios developed through the SBA/SCORE business plan program. Plaintiff informed Mr. McAlpine of these facts.

54. Mr. McAlpine declined to review or receive Plaintiff's comprehensive business plan. However, he did request a shorter "marketing plan."

55. The required meeting with the Opportunity Fund's Business Advisor, Mr. McAlpine which lasted approximately 10 minutes, wherein Mr. McAlpine asserted that he was just a "**business advisor**" providing advice only, and as such had no influence over the loan approval process.  Mr. McAlpine claimed this was handled entirely by "**loan consultant**" Mr. Cardenas. Plaintiff relied on this information or assertion as true.

56. Nothing in defendant Opportunity Fund's micro-loan application requires submittal of a business or marketing plan. In any case, Plaintiff had previously prepared a marketing plan within the SBA/SCORE developed business plan that Mr. McAlpine did not read or analyze.

57. Plaintiff retained the marketing consulting services of a marketing consulting professional to put together a marketing proposal to be attached to Plaintiff's marketing plan as to how this marketing consultant could assist in achieving the marketing objectives of the Plaintiff's business. Plaintiff continued to consult the SBA/SCORE for guidance and advice on starting his business, and in getting his application for funding through the defendants approved.

58. Plaintiff was diligent in addressing marketing in his amended proposal and plan, expanded the financial information in the marketing plan in order to achieve complete and total "marketing acumen", suspended his income generating activities, relied on his credit cards during this time to survive, and focused all of his attention full time to this task of completing a marketing plan to secure funding through Opportunity Fund as it appeared Mr. McAlpine had raised the bar standard on Plaintiff, and Plaintiff sought to meet that standard and challenge in good faith.

59. Plaintiff appropriately communicated by voice and email in attempt to receive some feedback as to the Marketing Plan refinements, but the Opportunity Fund Business Advisor Mr. McAlpine never responded to Mr. Lawrence requests for business coaching from Opportunity Fund regarding the areas where Mr. McAlpine had stated his concerns about marketing.

60. Plaintiff possessed 656 credit score, on December 26th, 2006.

61. In January 2007, Plaintiff was approved for $4,000 business credit loan from Citibank, based on the same financial and credit data that Opportunity Fund received in their application material request.

62. In early January 2007, after the meeting with Mr. McAlpine, Plaintiff informed Mr. Cardenas that he had been asked to produce a marketing plan by Mr. McAlpine. At this time, Mr. Cardenas did not request any additional information. Producing a marketing plan, as demanded by Mr. McAlpine, was seemingly the only piece of information now to be apart of the application process.

63. Based on the criterion stated in the Defendants' Small Business Micro Loan Application, Plaintiff's application was complete on January 4, 2007.

64. Plaintiff, at all times during this complaint, was a start-up business.

65. Plaintiff completed the requested marketing plan and both emailed and US mailed a copy of the marketing plan to both Mr. McAlpine and Mr. Cardenas on or about January 16th, 2007.  This marketing plan included a complete marketing proposal/plan from a

professional marketing consultant whom the Plaintiff consulted as a professional advisor, including SBA/SCORE consultants.

66. Defendants had received from Plaintiff six months of banking statements, complete tax information, credit history, credit score and report, resume, summary business plan, highly detailed and professional marketing proposal/plan, business information and records, license and proprietorship records from the beginning of the application process, coupled with two years profit and loss statements displaying a 50% profitability, over a steady increase in revenues.

67. Mr. McAlpine never responded to Plaintiff inquiries for input on the marketing plan nor to the Plaintiff's marketing plan itself, after criticizing Plaintiff as having a lack of "marketing acumen", at the January 4th, 2007 meeting.  Mr. McAlpine offered no specifics in refusing to read Plaintiff's 77 page SBA/SCORE derived and "coached" business plan.  Moreover, after requiring a shorter marketing plan, and then receiving that marketing plan the defendant  Mr. McAlpine never offered any business advisory critique or financial education assistance with the marketing plan as was requested. Plaintiff's marketing plan which Plaintiff completed in timely fashion at Mr. McAlpine's sole discretion.

68. On or about January 15th, 2007, after an earlier telephone follow-up with Mr. Cardenas, about the status of his application, requested that Plaintiff re-send 2005 information including a year 2005 profit and loss statement. Plaintiff mailed and emailed Mr. Cardenas's request along with an email communication for both Mr. McAlpine and Mr. Cardenas.

69. No mention of a profit and loss statement as being required by regularly requested information in determining a completed application on the Defendant Opportunity Fund's Micro Loan Application.

70. Defendant Opportunity Fund neither approved nor declined Plaintiff's completed credit application within the time allowed by law, nor the within the notice parameters required by law.

71. Defendant Opportunity Fund regularly advertises and provides financial services such as business coaching to other loan applicants to prepare them for a loan that can assist then in growing their respective business as well as repay the loan.   None of these advertised business coaching services were ever offered to Plaintiff by either Mr. McAlpine, Mr. Cardenas, or Mr. Weaver. On the contrary, Mr. Weaver never made an attempt to follow up with Mr. Lawrence, even after Mr. Lawrence sought additional input after his meeting on January 4th 2007.  Had the financial services that Opportunity Fund regularly offers to applicants been offered to the Plaintiff, an appropriate loan amount to which Mr. Cardenas believed Plaintiff's income was sufficient could have been considered and approved.

72. On February 28th, 2007, at a time more than three weeks after the Plaintiff, Mr. Lawrence was entitled by the ECOA to receive a response to his loan application submittal on January 4th, 2007 to the defendant's, he emailed Mr. Cardenas and Mr. McAlpine correspondence in exercise of his rights under the Consumer Credit Protection Act requesting his loan application status, noting the mishandling and delay in approving his application to date.

73. On March 1st, 2007, Mr. Cardenas telephoned Plaintiff.  During this conversation Plaintiff learned from Mr. Cardenas, that Mr. McAlpine's January 4th, 2007 assertions that he (Mr. McAlpine) had no influence or decision making capacity over the loan and loan process were false.  Moreover, Plaintiff was informed from Mr. Cardenas, that Mr. McAlpine was controlling the application process and influencing Mr. Cardenas to delay the application process.

74. Mr. Cardenas relayed the following choices to the Plaintiff : either re-apply for the smaller amount of $2,500 or accept an additional delay in Plaintiff's application of 3-4

months, without start-up capital, to demonstrate whether Plaintiff could meet the projections in his marketing plan. Plaintiff demanded this choice present by Mr. Cardenas be sent to him officially and in writing, so that he might appropriately respond**.**

75. On March 20, 2007, Defendant Opportunity Fund mailed Plaintiff a NOTICE of ADVERSE ACTION officially rejecting Plaintiff's credit application.

76. The statement of reasons for rejection of Mr. Lawrence application, were expressed as a lack of established earnings record and income insufficient for the amount of credit requested.

77. The March 20, 2007 notice also indicated that the defendant's credit decision was based in whole or in part on information obtained in a report from the consumer reporting agencies.

78. Plaintiff received this notice at his business address on or about April 3rd, 2007, and vigorously petitioned against this adverse act directly to Mr. Washington, Mr. Chang, and Mr. Weaver during April 2007.

79. Plaintiff reaffirmed his expectation and belief, in person, by telephone, and emails that the funding being sought from Opportunity Fund was to be 100% collateral guaranteed through NORCAL FDC, and neither denied this fact as implied and accepted contract.

80. Mr. Washington was unable to assist the Plaintiff regarding the violative ECOA action by Opportunity Fund or the adverse action in denying the loan, despite the guarantee from NORCAL FDC, stating to Plaintiff that he had no influence over Opportunity Fund.

81. Mr. Weaver never responded to Plaintiff request for an explanation.

82. The definition of discrimination under the Equal Credit Opportunity Act, 42 U.S.C. Section 1691 et al goes as follows: "To **discriminate against an applicant means to treat an applicant less favorably than other applicants**."

83. The above motives or the basis of contract, tort and statutory violation that have caused damage to the Plaintiff. Among these are:

(a) Discrimination in lending on the prohibited basis of race, class, and national origin, as set forth by the ECOA.

(b) Bad faith in consideration of plaintiff's small business loan application and a failure to exercise due consideration of all sources of income and relevant loan guarantees accompanying Plaintiff's application for credit.

(c) Disparate treatment, under the ECOA and 14th Amendment by failure to apply a clear and unambiguous criteria for loan eligibility when considering plaintiff's loan application, especially in comparison to other applicants of similar business experience, revenues and preparation for business growth and loan repayment.

(d) Disparate impact, under the ECOA and 14th Amendment.

(e) Retaliation for Petitioning as violating the ECOA, FHA, Consumer Credit Act, 42 USC Section(s) 1981, 1982, 1983, 1985, 1986, and 2000.

(f) Unfair Business practices, a violation of the FTC Act, and the SBA Act.

(g) Interference with business expectancy, opportunity, and economic advantage.

(h) Denial of the right of equal access to credit and capital.

84.  The defendant Opportunity Fund in its first inception as Lenders for Community Development was formed in 1993.

85.  Defendants' website(s) under the name of Lenders for Community Development, from the organization's inception – 1993 through 2005 – advertise and state receptivity and support towards the African-American community, including the consistent reference to 31% of their customers served as being African-American. During this time, their advertisements include a significant, if not central role, for African-Americans.

86.  Defendant Devin McAlpine became employed with Opportunity Fund in 2005 as a "Business Advisor" and "Business Consultant".

87.  In 2006, Defendant Opportunity Fund's website displays the beginning of a significant drop in African-Americans found eligible and qualified for business loans; from 31% for a period of 12 years, to 27%, a policy shift adverse to the low income African-American

community the Defendant Opportunity Fund had relied upon to build its micro-finance department of its lending business.

88.  Prior to 2007, Defendant Lenders for Community Development website advertising prominently featured African-Americans whom they, Opportunity Fund served.  In 2007 the Defendant changed their name to Opportunity Fund, and with it, a new website advertising featuring various entrepreneurial immigrants such as "Anna, Owner of Vision Dance and Pilates Center, San Jose." was now featured, not in addition to, but in substitution of the previously featured African-American clients.  This marketing shift as represented in the advertising also coincides with the significant change in the policy of the Defendant in approaching the communities they purport to serve.  Namely the policy of reducing the number of loan made to African-Americans entrepreneurs and businesses. Such was the success of this new policy that Defendant was able to alter the percentage of business loans to African-American from 31% over 12 previous years down to 10%.

89.  Plaintiff's application process and 5 month detrimental reliance period – December 26th, 2006 through May 16th, 2007 - resulting in adverse action against him, coincides within the time period of the defendants' drastic change in policy adverse to low-income African-Americans seeking business credit, loans and business coaching.

90.  Through aggressive advertising, publicity, and media campaigns, the Defendants seek out non-petitioning candidates for funding – Immigrants – who will advertise their stories with the Defendants as community developers in micro-finance, which is the clear marketing position and policy strategy of the Defendants.

91.  Plaintiff established a credible level of business creditworthiness as represented by the state agency guarantee earned from his contact with Opportunity Fund Board Member Arthur Washington, who watched the Plaintiff establish his business and marketing acumen, dealing with hardships while staying committed to his private investigation practice and business venture.  The defendants, as alleged as undisputed fact above, regularly offer and assist individuals financial services, in support of funding thereof, and

know how to assist people out of poverty and social and economic disadvantage. These financial services as well as funding in any and all amount were denied Plaintiff. Since at least 2007, defendants have regularly provided loans to white applicants, immigrants, and Hispanics who have generally similar profiles as the plaintiff regarding credit worthiness, bank-ability, and low income financial backgrounds.

92. Examples of similarly situated persons who did receive funding and financial services from the defendants are entrepreneur William Ortiz-Cartagena, of Gentle Parking, a white male with a Hispanic last name told CNNMoney.com, the White House, and Treasury Secretary Tim Geithner, Small business administrator Karen G. Mills, Obama administration officials, and members of Congress that "It was very hard to start this(his) company because traditional lending institutions were just 'no, no', just not even see me in the door,"; and "I(He) couldn't even get an appointment with a traditional institution."; "Opportunity Fund got Ortiz-Cartagena the money he needed and walked him through the steps of starting a business. Ortiz-Cartagena goes on to say about the business coaching he received: "They really sit down with you and make sure that first your business is viable – that it can be successful – and then helps you throughout the process."[2]

93. Persian immigrant Hammid Reza "…had some difficulty getting a micro-loan due to his 'poor financial background' and (poor) English language skills", but received $35,000 "…to purchase a salon called express cut in Mountain View."[3]

94. Svetlana Teran, a Russian immigrant was granted a $15,000 business loan by the defendants to open up a dance studio in Mountain View, CA.[4]

95. A Mexican immigrant who – with the help of the defendants - now co-owns a thriving housecleaning business, and  refugee from the war in Bosnia who – through the help of

---

2   CNNMoney.com "Community Lenders hit the funding jackpot" by Catherine Clifford, staff reporter, December 23, 2009

3   http://sanjose.bizjournals.com/sanjose/stories/2006/05/29/smallb2.html

4   CBS News; Bay Area "Microbusinesses" Get Financial Help – cbs5.com

the defendants – who saved enough to buy a home for herself and her daughters…

Website: James Irvine Foundation Leadership Award.[5]

96. "Juan Carlos, originally from Mexico" received $2,500 from the Defendants to sell shoes and clothing part-time. **[Opportunity Fund mail out postcard offering $200 to "Refer a friend to Opportunity Fund today!"]**

97. None of the above individual examples of the favored race, color, class, social and immigration status, and national origin, were, by their own admission, creditworthy or guaranteed before receiving financial services and capital from the defendants, yet all received capital and financial services, whereas Plaintiff, because he was African-American, male, and a US Citizen, was denied the right of equal access to capital and financial services necessary to secure access of capital.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE EQUAL OPPORTUNITY CREDIT ACT, and THE CONSUMER CREDIT ACT, 15 **U.S.C. § 1691** *et seq.*,

98. Plaintiff incorporates by reference paragraphs 1-97 as though fully set out herein and further alleges as follows:

99. The Equal Credit Opportunity Act was first enacted in 1974 as a consumer protection statute prohibiting discrimination in the issuing of credit.

100. The Equal Credit Opportunity Act, 15 U.S.C. § 1691 (1976), makes it unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race, and on the basis of a credit applicant receiving or having received public assistance as part of an established earnings record. Section 1691(e) of this Act allows a civil action to be brought by any person damaged under the Act. The Act has been broadly construed by the courts in order to make effective its provisions to protect consumers.

---

5   http://www.irvine.org/leadership/142-leadership-awards/787-eric-weaver?
tmpl=componen...

101. The defendants are creditor(s) within the meaning of 15 U.S.C. § 1691(e).

102. As creditors within the meaning of the Equal Credit Opportunity Act, the Opportunity Fund had an obligation to notify the Plaintiff, Mr. Lawrence of a decision on his January 4, 2007 completed loan application by Monday, February 5, 2007. Defendants prepared and mailed the decision in the form correspondence referred to as a Notice of Action Taken and Statement of Reasons to the Plaintiff on March 20, 2007.  This fail ure to notif the Plaintiff of a decision by February 5, 2007 is a violation of the statutory requirements under the Act.

103. As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff's as described herein, Plaintiff has suffered, and continues to suffer, great embarrassment, humiliation and emotional distress.

104. Plaintiff possessed adequate income, a 100% collateral guarantee by State of California chartered and regulated Community Development Entity (CDE) which was and is an alter ego partner sufficient to support the loan, strong recommendation and urging by a loan committee advisor, adequate credit history to qualify for the small business micro credit loan requested, public assistance income, comprehensive business plan, additional and specialized marketing plan not generally required, licensed experience and history of professional business acumen in the field of business for which Plaintiff sought the small business micro-credit loan, and the Defendant(s) were very clearly aware of these facts.

105. The Defendants violated the Equal Credit Opportunity Act and Regulation B in that:

    (i) Defendants willfully refused to accept and consider relevant information offered by Plaintiff for credit application.;

    (ii) Defendant(s) failed to respond to Plaintiff's continual requests inquiring into status of credit application.

    (iii) Defendants failed to notify applicant of adverse action within 30 days of completed application.

(iv) Defendants failed to disclose to applicant of the right to request reasons for adverse action.

(v) Defendants failed to disclose that complaint can be directed to the FTC.

(vi) Defendants failed to disclose current and proper address of regulatory agency responsible for administering compliance with this law.

106.    Defendants have violated the Equal Credit Opportunity Act, Regulation B, the Consumer Credit Protection Act, and specifically 12 C.F.R. Ch.II, 202.2(f) in that:

107.    Not only did defendants fail to exercise reasonable due diligence by not providing a decision by the deadline prescribed in the Equal Credit Opportunity Act, Opportunity Fund alleged falsely that Plaintiff's application was incomplete on May 16, 2007 after answering Plaintiff's application as complete on March 20, 2007.

108.    Defendants attempted to evade compliance with ECOA, Consumer Credit Protection Act and additional federal prohibitions through the practice of issuing purposefully vague, fluid, and expanding guidelines and definition of what constitutes a complete application. In this regard, Defendants sought to deceive Plaintiff.

109.    Defendants attempted to evade compliance with ECOA and the Consumer Credit Protection Act by regularly engaging a credit evaluation system that is not sound in that it is vague in its application and is discriminatory in its application and effects as described herein.

110.    Prima Facie violation of the Equal Credit Opportunity Act, Regulation B, the Consumer Credit Protection Act, and specifically 12 C.F.R. Ch.II, 202.2(f) is established by the following facts:

(i)  Plaintiff is African-American.

(ii)  Plaintiff's credit application was creditworthy, because the same financial information provided to the defendant made Plaintiff eligible for business credit from the State of Citibank.

(iii) The defendant rejected the Plaintiff's credit application despite a favorable credit rating and State of California chartered 100% collateral guarantee via Opportunity Fund board member Arthur Washington.

(iv) The defendant demonstrates that a pattern and practice of discrimination in the form of disparate impact against African-Americans has taken hold in that African-American clients served by the defendants dropped from 31% to 10% in the two years for no explainable reason of business necessity.

(vi) The defendants extended or arranged for the extension of credit to other applicants with a similar credit history, who were not African-American and male.

(vii) Plaintiff suffered severe injury in this case of the denial of credit, detrimental reliance on Defendants' unreasonable and untimely credit answer, damage to credit reputation and financial condition, embarrassment, and humiliation stemming from the rejection and untimely answer.

111. Mr. Lawrence in applying for business credit via the Micro Loan program was treated differently than other loan candidates.

112. Defendant Opportunity Fund advertises that they typically provide a decision to applicants within 2 to 3 weeks.  Mr. Lawrence received a denial ten weeks after completing his application.

113. Defendant also advertises that applicants would receive business coaching that would better prepare applicants for a micro loan to both increase applicants chances for success in their businesses, as well as insure loan repayment.  Mr. Lawrence was not provided any of this business coaching service, even after making attempts to avail himself of the coaching services that were marketed to him by defendant Mr. Washington as well Opportunity Fund's advertising materials.  Whereas, Plaintiff has provided contrary examples of similarly situated loan candidates that in fact received the coaching services that Plaintiff sought but was denied.

114. Moreover, even if lenders such as Opportunity Fund are not required to provided business coaching services, to the extent that they do, such service or assistance must be provided in a non-discriminatory manner.

115. In the instant case there is no explainable rationale for the differences in treatment by not providing business coaching services to the Plaintiff as they are provided to other loan candidates.

116. Further, the aforementioned dramatic drop off in the percentage of loan to African-Americans has had a disparate impact on the plaintiff and African-American entrepreneurs in the locales Opportunity Fund purports to serve.

117. While the disparate impact to African-Americans does not necessarily violate the Equal Credit Opportunity Act, when such a disparate impact to a protected class occurs Defendant responsible for the impact must have a manifest explanation that is not speculative, hypothetical or irrelevant under the circumstances.

118. Moreover, even if justified as a business necessity, Opportunity Fund is in violation of the Equal Credit Opportunity Act if an alternative practice or policy could serve the same purposes and mitigate the disparate impact to Plaintiff and similarly situated African-American entrepreneurs.

119. Plaintiff is entitled to court costs, together with reasonable attorney's fees as determined by the Court under 15 U.S.C. § 1691e(d).

120. WHEREFORE, Plaintiff prays:

For actual damages in the amount of $16,453. For general damages in the amount of $93,109. For compensatory damages in an amount to be proved at trial. For special damages - loss of earnings, credit, and earning capacity. For statutory damages in the amount of $10,000. For appropriate injunctive relief.  For exemplary or punitive damages; for attorney's fees and costs of the suit herein incurred; and for such other and further relief as the court may deem proper.

SECOND CAUSE OF ACTION

DISCRIMINATION

Civil Rights Violations of 42 USC **§§** 1981, 1982, and 42 USC **§** 2000,

The 13th and 14th Amendments to the United States Constitution.

121. Plaintiff incorporates all previous paragraphs herein by reference as if fully set forth.

122. This cause of action is brought pursuant to the Thirteenth Amendment of the United States Constitution to redress the deprivation of rights, privileges and immunities secured thereby. It is also brought pursuant to 42 U.S.C. §§ 1981 and 1982 to secure the right of Plaintiffs to make and enforce contracts on the same basis that such rights are enjoyed by privileged persons, and to enforce the right of Plaintiffs to inherit, purchase, lease, sell, hold, and convey real and personal property on the same basis as privileged persons.

123. Defendant, on the basis of race and color, and class, has deprived Plaintiff of the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations, including the right to enforce contracts and to have interest in property, as are enjoyed by privileged persons.

124. As a direct and proximate result of the wrongful acts by the Defendant, Plaintiff has suffered actual damages and will continue to suffer damages from the humiliation and embarrassment caused by the Defendant's violation of equal credit opportunity law, disparate treatment as described herein and overall disparate impact via Opportunity Fund's loan funding policy alterations that caused African-American to be disproportionately impacted negatively.

125. Discrimination based upon race and national origin is a significant part of this complaint, as the following advertised and dramatic shift from or exclusion of African-Americans from the Defendants products and services described in the following chart with figures from the defendants' website**:**

//

//

|  | November 2004 | October 2007 |
|---|---|---|
|  | "The businesses we serve:" | "Who we serve:" |
| Women | 57% | 70% |
| Latinos | 39% | 40% |
| African-Americans | 31% | 10% |
| Asian-American | 15% | 20% |

126. It is important to begin to investigate the motivation, style, and methodology of the discrimination based upon race and national origin practiced by the defendants Devin McAlpine and Eric Weaver and described throughout this complaint, as well as how it has discriminated against and damaged the Plaintiff, and how it has resulted in a pattern and practice of discrimination against African-Americans in general.

127. It appeared to Plaintiff and Plaintiff had every expectation, that his business credit application would certainly be approved based on his experience with the representative defendants :  Mr. Washington, Mr. Chang, Mr. Cardenas. No antagonism or animosity present, only encouragement, until Defendant Devin McAlpine initiated the adverse action which caused this complaint.

128. This condescending and debilitating treatment of Mr. Lawrence by Mr. McAlpine through his incomplete advisory services and his outright dismissal Plaintiff efforts to conform his business marketing plan is illustrative of treatment that creates a higher barrier to entry for African-Americans than similarly situated Opportunity Fund loan candidates.

129. Defendant Mr. McAlpine's neglect in providing the business coaching and consultation sought by the plaintiff, as well as Mr. McAlpine's refusal or neglect in responding to the Plaintiff's correspondence during the credit application process are elements that taken into account constitute prohibited discrimination against the African American plaintiff Mr. Lawrence because such singular treatment of Mr. Lawrence and not similarly situated loan candidates constitutes disparate treatment.  Moreover, the elements of this disparate treatment, when taking into account the failure to provide timely notice of the adverse

action against the plaintiff and the aforementioned and described precipitous drop in the percentage of loan made to African Americans constitutes prohibited disparate impact by the Defendants against African American in Opportunity Fund's loan processes.

130. As a result of the concerted unlawful discrimination and other wrongful acts by Defendants Mr. McAlpine, Mr. Chang, Mr. Cardenas, and by consent Mr. Weaver has deprived the Plaintiff Mr. Lawrence of both his liberty without due process of law and his right to equal protection of the laws, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

WHEREFORE, Plaintiff prays judgment against Defendant for:

(a) Actual damages in an amount to be proved at trial;

(b) Compensatory damages in an amount to be proved at trial;

(c) Punitive damages;

(d) Appropriate injunctive relief;

(e) Reasonable attorneys' fees and costs of suit; and

(f) Further relief as this Court deems just and proper.

THIRD CAUSE OF ACTION

VIOLATIONS OF 42 U.S.C. § 1983: DEPRIVATION OF RIGHTS

131. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 130 above with the same force and effect as if herein set forth.

132. Further Jurisdiction of this court arises under 28 U.S.C. §§ 1331, 1337, 1343(a), and 1367(a); 42 U.S.C. §§ 1983, 1985, 1986, and 1988; and 18 U.S.C. **§§** 1961-1968.

//

//

4th Amended Complaint - C10-cv-619

26

133. Jurisdiction of this court for the pendent claims is authorized by F.R.Civ.P. 18(a), and arises under the doctrine of pendent jurisdiction as set forth in <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966).

134. At all times relevant herein, the conduct of all Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

135. A substantial part of the events giving rise to this action occurred in Alameda County and San Francisco County; Defendant(s) are incorporated in the State of California and are subject to all the laws therein.

136. Venue is therefore proper under 28 U.S.C. Section 1391(b).

137. Acting under the color of law, Defendants worked a denial of Plaintiff's rights, privileges or immunities secured by the United States Constitution and by Federal law,

138. By discriminating against Plaintiff on the basis of race, color, and class as determined by 15 U.S.C. 1691 et al,

139. By denying Plaintiff access to financial and business development services extended through direction and mechanism of Congressional legislative intent to which Plaintiff was eligible and qualified for,

140. By conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of laws,

141. By refusing or neglecting to prevent such deprivations and denials to Plaintiff, thereby depriving Plaintiff of his rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

142. Defendant Devin McAlpine, as all other Defendants, act in an ongoing capacity of financial, business, socio-economic advisors to their clients and credit applicants.

143. In addition, US Federal law, especially US Small Business Administration law, rules, and regulations **[42 U.S.C. § 631 et seq, et al]** impel a fiduciary duty, function, and relationship upon the Defendants.

144. Thus, Defendant Devin McAlpine, as all Defendants, acquire and enlist a duty to maintain a confidential and fiduciary relationship to the general public, towards the fair, just, and good faith function and operation of said defendant persons, entities, and corporation(s), its credit scoring and application evaluation system(s), its clients, and applicants for the purposes of 1.) "Foster(ing) business ownership and development by individuals in groups that own and control little productive capital, and 2.) Foster(ing) business ownership by individuals who are both socially and economically disadvantaged."

145. To the above purposes, the US Federal Government funds and directs business development programs such as that of the defendants, creating and impelling a fiduciary relationship, between the US Government, the Defendants, the People of the United States of America, towards the implementation of socio-economic policy to address the following specific Congressional findings as follows:

146. "That the opportunity for full participation in our free enterprise system by socially and economically disadvantaged persons is essential if we are to obtain social and economic equality for such persons and improve the functioning of our national economy; That many such persons are socially disadvantaged because of their identification as members of certain groups that have suffered the effects of discriminatory practices or similar invidious circumstances over which they have no control; That such groups include, but are not limited to, Black Americans, Hispanic Americans, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities…"; ( **Small Business Act, 15 USC §§ 631 et seq.)**

147. At all times during this complaint, and throughout their ongoing relationship with US Federal and State governments, the Defendants have had specific, comprehensive, and detailed knowledge of the purposes to which the Defendants were enjoined to perform said socio-economic purposes upon receiving US Government and State Funding, certification, and charter.

148. Defendants, at all times during this complaint, and throughout their ongoing relationship with US Federal and State governments, through the enacting, engaging, and implementing of said socio-economic programs and purposes had intimate knowledge, training, experience, and education of and with Federal and State law program rules, requirements, and expectations of performance of said socio-economic programs and policies, and of the US Federal and State Laws protecting against discrimination for which these government purposes arise.

149. Despite this above described awareness, Defendants did discriminate within the functioning program against Plaintiff on a basis of race and class by their disparate treatment as previously outlined and described and the disparate impact of the change in the percentage of loans found suitable to provide to the African-American low-income community Defendant purports to serve.

150. Plaintiff matches the socio-economic criterion and intent of both Federal and State described purposes for inclusion into the American economy through small business development and is eligible and qualified for such government funded program aid and development service in that **1.)** Plaintiff seeks full participation in the American free enterprise system, **2.)** Plaintiff owns and controls little productive capital, **3.)** Plaintiff has very little access to capital due to circumstances beyond his control, and **4.)** Plaintiff is socially disadvantaged because of his identification as an African-American, whereby such groups have suffered the effects of discriminatory practices or similar invidious circumstances over which they have no control.

151. Plaintiff at all times during this complaint is a socially disadvantaged individual due to economic class, status, and experience of poverty and dependence on government public assistance.

152. Plaintiff sought what the US government funded program intended for Plaintiff as eligible, qualified, concerned and interested in receiving such service and opportunity

from the US government through the defendants' US government funded, certified, directed, and chartered socio-economic program.

153. At the January 4th, 2007 meeting described previously, Plaintiff in good faith did confide in Defendant Devin McAlpine, the above described circumstance endured by the Plaintiff, and the substantial and confidential nature of Plaintiff's self-employment and history, despite the attack, challenge, antagonism, intimidation, confrontation, insult, and intentional infliction of emotional distress by the defendant Devin McAlpine to discourage Plaintiff.

154. Not seeking to be victimized by discrimination based upon race and national origin, and/or the personal motives, biases, and motivations of a single individual, especially as Plaintiff had been already led to believe that this government funded program of the defendants would execute its purpose in favor of the Plaintiff as the State government chartered 100% collateral guarantee had already been promised and contracted to Plaintiff, Plaintiff did, in continued good faith, attempt to persuade defendant Devin McAlpine to the merits of Plaintiff's self-employment, business plan, venture and proposal.

155. In the continuing yet unjustified challenge to prove Plaintiff's worth, professionalism, business acumen, and business Plaintiff did communicate to Defendant Devin McAlpine that the only obstacle to achieving sustained economic opportunity and success through business ownership and development was lack of access to productive capital.

156. Further, Defendants did through their vague, fluid, subjective, and judgmental grading system, and/or limited system of credit scoring and applicant evaluation created a system under the auspices of an objective scoring system predisposed to intervention and discrimination in the form of the disparate treatment of the Plaintiff as described herein and the disparate impact to African-Americans as exemplified by such entrepreneurs being served falling from 31% to 10% in three years from the end of 2004 to the middle of 2008.

157. An example of Legislative intent: "It is the declared policy of the Congress that the Government should aid, counsel, assist , and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government (including but not limited to contracts or subcontracts for maintenance, repair , and construction) be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the over-all economy of the Nation." (**The Small Business Act, 15 USC §§ 631 et seq.,)**

158. Plaintiff sought and expected aid, counsel, assistance, through the defendants' government funded, directed, certified and chartered business and community development program, but was denied by the negligent and unlawful acts of the Defendants. And through such acts, Plaintiff has been denied the opportunity to contract with the government as intended by the government as described in **The Small Business Act, 15 USC §§ 631 et seq.,** through the essence of the American economic system of private enterprise.

159. By the Defendants intervention and interference with the legislative intent of the US government and government funded program operated by the defendants, both Plaintiff and the US government were harmed by the invidious acts against the common good.

160. Further, the defendants intervention goes against and violates the legislative intent of the State of California for specific purpose corporations as described in Corp C § 14002 in paragraph 482:

"It is the intent of the Legislature in enacting this part to promote the economic development of small businesses by making available capital, general management assistance, and other resources , including loan services, personnel, and business education to small business entrepreneurs, including women and minority owned businesses , for the purpose of promoting the health, safety, and

social welfare of the citizens of California, to eliminate unemployment of the economically disadvantaged of the state , and to stimulate economic development, employment , minority group , women, and disabled person entrepreneurship…" **(Corp C § 14002)**

161. Another example of Legislative intent:

"The essence of the American economic system of private enterprise is free competition. Only through full and free competition can free markets, free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment be assured. The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation.  Such security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed."  (**The Small Business Act, 15 USC §§ 631 et seq.,)**

162. Through the above described actions by the defendants, on a State level as well as Federal, defendants, Plaintiff has suffered damages through loss contract, contract relationship with defendants and the government, business expectancy, credit expectancy, and a prospective economic advantage.

163. The above described nature and actions of the Defendants, and the situation and circumstances to which they form and operate, while acting under color of state law, statute, ordinance, regulation, custom, and/or usage in California, as described above, violate and counter applicable Congressional legislative intent, which is the very basis upon which the defendants' existence and operation rest.

164. What is particularly troublesome with respect to the Defendants' misconduct, is that the collective actions of defendant Devin McAlpine, in not providing  the promised coaching services and lack of follow up to plaintiff's request for assistance, as well as, the illegal action of Mr. Cardenas by failing to provide a statutorily timely response to an applicant who was an eligible applicant under his own merits, and who is representative of the very

reason for, and design of, a community development and micro-finance industry in which the defendants claim to represent.

165. As a result of concerted unlawful and other wrongful acts by the Defendants, Plaintiff was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

FOURTH CAUSE OF ACTION

VIOLATION OF 42 U.S.C. 1983: RETALIATION FOR PETITIONING

166. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 166 above with the same force and effect as if herein set forth.

167. Acting under the color of state law, defendant(s)' Mr. Chang et al applicable defendants liable under the cause of action alleged herein, worked a continuing and final denial of Plaintiff's rights, privileges, or immunities secured by the United States Constitution or by Federal law, by retaliating against Plaintiff because he petitioned and demanded that his rights be upheld as per 15 USC 1681 et seq, et al applicable Federal law, in particular Federal Consumer Credit Protection law(s), and because Plaintiff demanded that his contract with Defendant board member Mr. Washington be upheld.

168. As a result of the retaliation by the Defendants for Plaintiff exercising his First Amendment right to petition, Plaintiff has been deprived of his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

169. WHEREFORE, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

FIFTH CAUSE OF ACTION

VIOLATIONS OF 42 U.S.C. 1985: CONSPIRACY TO INTERFERE

WITH FEDERALLY PROTECTED CIVIL RIGHTS

170. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 179 above with the same force and effect as if herein set forth.

171. The Defendants **(a)** had an object to be accomplished; **(b)** had an agreement on the object or course of action; **(c)** performed one or more unlawful overt acts; and **(d)** caused Plaintiff damages that were a direct result of those acts.

172. In furtherance of their object, defendants did two or more overt acts against the Plaintiff. Those unlawful overt acts include, as described in full force above, but are not limited to, the following: Devin McAlpine et al defendants advised, plotted, schemed, and strategized with Mr. Cardenas about how to effectively deny Plaintiff's credit application, and in concert with Mr. Cardenas et al, delayed the answer on Plaintiff's credit application for over 60 days in clear and blatant violation of 15 USC 1691(e). Moreover, Mr. Chang denied Plaintiff's petition for redress and compliance with Federal law with respect to Plaintiff's contract with Mr. Washington and credit application on May 16th, 2007, and all other overt and covert acts described and alleged above and those unknown to the Plaintiff.

173. As a result of the concerted unlawful actions of the Defendants, Plaintiff was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. **§§** 1983 and 1985.

174. WHEREFORE, Plaintiff demands judgment for the conspiracy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

SIXTH CAUSE OF ACTION

VIOLATIONS OF 42 U.S.C. 1986: REFUSING OR NEGLECTING TO PREVENT

175. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 330  above with the same force and effect as if herein set forth.

176. At all times relevant to this Complaint, Defendants Devin McAlpine, Mr. Cardenas, and Mr. Chang as community development officers of the Defendants Opportunity Fund were acting under the direction and control of Defendant Executive Director Eric Weaver and the Opportunity Fund Board of directors, advisors, members, associates, and partners.

177. Acting under color of law and pursuant to official policy or custom, government charter, funding initiative, government partnership and joint venture,  Defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant business advisors, loan consultants, micro-finance manager, community development officers in their duties to refrain from:

    **(a)** Unlawfully discriminating against a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

    **(b)** Unlawfully denying a citizen, who was acting in accordance with his constitutional and statutory rights, privileges, and immunities, access to government funded and directed financial and business development services.

    **(c)** conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of California; and

**(d)** Otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

178. Defendants had knowledge or, had they diligently exercised that duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

179. Defendants directly or indirectly, under color of law, approved or ratified the unlawful and deliberate conduct of Defendant Devin McAlpine and Mr. Cardenas heretofore described.

180. The defendants' credit scoring system and credit applicant evaluation system in and of itself, and the negligent and intentional supervision thereof was and is a direct and proximate cause of the wrongful acts described above and throughout this complaint as fully set forth.

181. As a direct and proximate cause of the negligent and intentional acts of Defendants Devin McAlpine and Mr. Cardenas, Defendant Does 1-100, and all named Defendants as set forth in paragraphs above, Plaintiff suffered mental and emotional injury, loss of income, loss of earning capacity and ability, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. **§§** 1983.

WHEREFORE, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

WHEREFORE, Plaintiffs ask judgment against Defendant for:

(a) Actual damages in an amount to be proved at trial;

(b) Compensatory damages in an amount to be proved at trial;

(c) Punitive damages;

(d) Appropriate injunctive relief;

(e) Reasonable attorneys' fees and costs of suit; and

(f) Further relief as this Court deems just and proper.

182. As a direct and proximate cause of the negligent and intentional acts of Defendants acting in concert and conspiracy, in a clear policy, pattern and practice of discrimination, and with Defendant Does 1-100, and all named Defendants as set forth in paragraphs above, Plaintiff suffered mental and emotional injury, loss of income, loss of earning capacity and ability, financial and economic injury, loss of prospective economic advantage, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth, Thirteenth, and Fourteenth Amendments of the Constitution of the United States and protected by Title VI of Civil Rights Act of 1964, 42 U.S.C. §§ 1983, The ECOA 15 U.S.C.§§ 1691 et seq., The FHA - 42 U.S.C. §§ 3601 et seq., The FEHA - CAL. GOVT. CODE § 12940 et seq., the Unruh Civil Rights Act of California CC §§ 51, 52(e), et al.

183. The Equal Credit Opportunity Act (ECOA), 42 U.S.C. 1691 et seq., acts as the primary and fundamental check, balance, enforcement and supervision mechanism to American MFI's and of banking and credit for the socially and economically disadvantaged as an industry whole. When an American MFI violates the ECOA and other civil rights laws, it harmful to the continued encouragement and development of entrepreneurs, especially the low income self employed entrepreneurs they purport to exist to help. It sends a dangerous tremor of discouragement in for may entrepreneurs who take the chance on being a risk taker in the economic marketplace. Such policies of conduct operate to threaten the cause for hope against persistent poverty among low income and minority

group citizens and residents.  As well as jeopardizing the credibility of an expanding micro-credit industry, and the chance for a vibrant and diverse local economies in the United States.

WHEREFORE, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

WHEREFORE, Plaintiff prays judgment against the defendants, and each of them, as follows:

1.) For a preliminary injunction and a permanent injunction enjoining defendants and defendants' agents, servants, employees, officers, members, advisors, funders, investors, affiliates, associates, joint venturers, co-conspirators, and all persons and entities acting under, in concert with, or for defendant from denying, and aiding and inciting such denial, and from making any discrimination, distinction, or restriction in providing full and equal accommodations, advantages, facilities, and services in defendants' business establishment;

2.) For actual damages in the total amount of $16, 453 for counts 1 & 2

3.) For general damages in the sum of $93,109;

4.) For compensatory damages under the FEHA - **CAL. GOVT. CODE § 12940 et seq**.

5.) For statutory damages under 15 U.S.C **§§**1691(e) (b) for violations of the **Equal Credit Opportunity Act**; The Fair Housing Act **42 U.S.C. §§ 3601 et seq.,**

6.) For statutory damages in the sum of $315,750 pursuant to Civil Code Section 52;

7.) For attorney's fees pursuant to Civil Code Section 52 and;

8.) For reasonable attorney's fees as determined by the Court under 15 U.S.C. Section 1691e (d);

9.) For compensatory damages, including mental anguish, emotional distress, humiliation, embarrassment, and degradation of credit in the amount of $25,000.

10.) For compensatory damages for State-law claims of fraud and deceit, constructive fraud, and intentional misrepresentation in the amount of $25,000;

11.) For compensatory damages for State-law claims of discrimination by race;

12.) For compensatory damages as determined by the Court under 42 U.S.C. **§§** 1981, 1982, 1983, 1985, and 1986;

13.) For compensatory damages State-law claims of Negligent Supervision, Vicarious Liability, Joint and Several Liability as determined by the Court;

14.) For special damages - loss of earnings, credit, and earning capacity;

15.) For exemplary and punitive damages;

16.) For costs of the suit herein incurred; and for such other and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

Dated: September 24, 2010                          By: **/S/ Martyn Collins**

_____

Martyn Collins
Attorney for Plaintiff
Brain Lawrence, dba
Brian Lawrence & Associates